The opinion of the court was delivered by
Nicholls, C. J.
Plaintiff’s demand is based upon allegations that, he is'the owner of twenty-five shares of the par value of one hundred dollars each, of the capital stock of the Gullett Gin Manufacturing Company, a corporation created and existing under the laws of the State.of Louisiana', with its domicile in the Parish of Orleans; that the capital stock of said corporation, as organized under its charter, is one hundred thousand dollars, and that petitioner is advised, informed, believes and so avers, that all of said capital stock was subscribed and paid for.
That the objects and puiposes of said corporation are declared to be for the manufacture of cotton gins, cotton presses, agricultural implements, engines, and any and all kinds of machinery, and the sale thereof; that under the charter of said corporation, the superintendence and management of its affairs are confided to a Board of Directors, who are to be elected. annually, and from said Board are chosen the executive officers of said corporation; and that all of the foregoing will more fully, and at large, appear by reference to the charter of said corporation, a certified copy whereof will be produced upon the hearing of this cause.
That he is advised, informed, believes and so charges, that immediately upon the formation of said corporation the control of its stock was centralized and syndicated in the hands of Albert Baldwin, John H. Hanna, Cartwright Eustis, and others presently unknown to petitioner, but who acted in confederation with said parties and under *1385 their direction and control; that among those so assisting the said Baldwin, Iianna, Eustis and others, in the operation of the business of said corporation was one B. W. Taylor, who, owning a limited amount of the capital stock, parted with the equitable title thereto, in July, 1887, by the pledge thereof at, or about, the value of said stock at that time, and which said stock was subsequently acquired by the pledgee and transferred for a good and valid consideration.
That the business of said corporation has been large and valuable, and its profits great; that it has continuously accumulated a surplus from its earnings, so that, as appears by the last report to the stockholders of said corporation, on January 1st, 1899, said company had a surplus over and above its capital stock, based upon estimated values (the said statement, under Section 5 of the charter, being made upon the oath of the president and secretary of said corporation), exceeding the sum of $143,000.00, thus making the capital stock of the value of $243.00 per share.
That the outstanding liabilities of said corporation, as appears by the aforesaid statement submitted by the president and secretary to the stockholders’ meeting on December 31, 1898, and which statement was under oath as aforesaid, amounted to the sum of $71,422.59; that, after making all allowances for the aforesaid liabilities, the capital stock of said corporation, and the surplus thereof, amounted to the sum of $243,603.72, all of which will more fully, and at large, appear by the aforesaid statement, a copy of which is annexed and made part hereof.
That it was the duty of'said Board of Directors, after making provision for the discharge of the company’s liabilities, to pro-rate and divide among the stockholders, who had invested their funds in said corporation, the profits and earnings thereof, and not by indirection and in violation of law, and without the sanction of the requisite vote of the stockholders, to attempt to increase the capital stock of said corporation, beyond the limit fixed in its charter, by setting aside from the earnings of said corporation the largest portion thereof, and dedicating it as a surplus fund, when, in the conduct of said business, there was no necessity for the same; and that the aforesaid acts of said Boárd of Directors controlling a majority of the stock were in bad faith and to the wrong and injury of the minority stockholders who were entitled to a fair and just distribution of said company’s earnings.
*1386 That the management in control of the stock and administration of said corporation, have, with the view, with the intent, and for the purpose of depriving the. minority stockholders of their right in and to a just and fair distribution, continuously set aside from the earnings of said company the funds realized from the conduct of said business, and constituted the same a surplus as aforesaid, in order that they might profit thereby, to the prejudice of the minority stockholders, and that the said stock of said corporation has no market value, and petitioner is unable to dispose of the same at anything approximating its value, notwithstanding the fact that he has made repeated efforts to sell said stock to those in control of said corporation, but who, knowing the disadvantage under which.petitioner labors (he having no voice in the administration of the affairs of said corporation, and the same being operated in their interest), have declined to purchase said stock, except at- a nominal price therefor.
That the capital stock of siiid corporation, under and by virtue of its charter, is fixed at the sum of $100,000.00, no provision being made in said charter for an increase of said capital stock, the only authority for any such increase being made by amendement of said charter in accordance with the provisions of law existing at the time of the organization of said corporation; and that upon the protection afforded to petitioner by the provisions of the charter, and the law controlling the same, he was induced to purchase stock in said corporation, being-advised that he was entitled to a fair and just distribution of the earnings of said company, and that it is bad faith on the part of said managing directors to deny petitioner his right to a participation in said fund, under the pretext of creating a surplus, and thereby indirectly increasing the total stock of said corporation without an. observance of the provisions of law in such cases made and provided as aforesaid.
That he is, therefore, entitled to an accounting through the instrumentality of a receivership herein of his proportion of the profits earned by said corporation, with interest at the rate of five per cent. per annum from the time when said profits should have been distributed among the stockholders of said corporation, but whieh were in bad faith withheld from petitioner and the minority stockholders similarly situated.
That the administration of the governing body of said corporation *1387 has been reckless and extravagant; that they have from time to time allowed salaries to those forming the “combine” or syndicate, largely in excess of the value of their services, thus operating to the prejudice of the stockholders of said corporation, and particularly of your petitioner and those similarly situated; that there is no provision in the charter of said corporation- according 'to the executive officers thereof salaries for their services, although empowered by said charter to appoint such officers, clerks and agents as they may deem necessary for the business of said company; that under the power so conferred by said charter, the compensation of the executive officers, if allowable, should be commensurate with the services rendered, and not extravagant in the interest of those controlling a majority of the stock and voting themselves large and extravagant compensation.
That the liabilities, as shown by the last annual statement of said corporation’s affairs, aggregate the sum of $71,000.00-; that had the administration of those in charge of said corporation been for the benefit and advantage of the stockholders generally, instead of those particularly favored by the parties in control, there would have been no indebtedness whatever at this time due or owing by said company, and that while said statement shows the alleged indebtedness, petitioner, at the proper time, will surcharge and falsify the same, and upon information, advice and belief, he now denies that the corporation is liable for the amount set out in said statement,. with accumulated 'interest thereon, at the highest conventional rate therefor.
That those in charge of said corporation and its administration and management, to-wit: Albert Baldwin, John IT. ITanna, Cartwright Eustisj and those combining and confederating with them, have; abused their trust in misapplying the moneys and property of said company to their personal advantage and benefit, and to the great wrong and'injury of petitioner and those similarly situated, as well as to the great wrong and injury of said corporation and the creditors thereof; that said parties thus combining and confederating have, from time to time, in closed meeting, appropriated to their personal use and under the guise of “donations” to each other, a total amount of upward of $33,000.00, and that said “donations” were, made at meetings of the directors, in which the said Baldwin, Hanna, Eustis, and others participated.
*1388 That on July 27th, 1885, John II. Hanna moved a “donation” to Albert Baldwin, for his services, in the sum of $3,000.00 of the corporation’s money; that said motion having- been carried, the said amount, as petitioner is advised, informed, believes and so charges, was paid out of the corporate fund; that at said.meeting, also in addition to the annual compensation allowed George A. Peete, secretary of said company, a “donation” of $300.00 was voted to him for his services as secretary, and which, as petitioner is advised, informed and believes, and so charges, was paid out of the assets and funds of said corporation, all the foregoing being to the great wrong and injury of petitioner as one of the stockholders of said company.
That at the annual meeting in 1886, a “donation’’ of $2,500.00 was voted to Albert Baldwin as president of said corporation, and having been carried, as appears by the minutes of said corporation, was, as petitioner is advised, informed, believes and so charges, given to said Baldwin out of the corporate assets and moneys, to the great wrong and injury of said corporation, and of your petitioner, as one of the stockholders thereof; that at the same meeting a “donation” of the corporate funds, to the extent of $1,000.00, was made to George A. Peete, for his services as general manager, in addition to the salary fixed for his services, and which amount, petitioner is advised, informed, believes and so- charges, was paid out of the assets and moneys of said company to the great detriment, wrong and injury of said corporation, and of your petitioner as one of the stockholders.
That at the annual meeting in 1887, the Board of Directors of said company, composed of the said Hanna, Baldwin, Eustis and others as aforesaid, a motion was made “donating” -to said Baldwin, as president, for'his services, the sum of $2,500.00; that at the same meeting there was voted to John II. Hanna, for services in the past, a “donation” of $2,000.00, and also a “donation” to George A. Peete, as additional compensation for his services of $1,000.00, all of which, as. petitioner is advised, informed, believes and so charges, was paid out of the property, funds and assets'of said corporation, to its great wrong and injury, and to the prejudice of petitioner and other stockholders similarly situated.
That at the annual meeting in 1888, the.corporation at all times being under the control of substantially the same Board of Directors, a motion was made and carried “donating” to Albert Baldwin, as *1389 president, the sum of $5,000.00; to John H. Hanna, the. sum of $2,000.00; to George A. Peete, the sum of $1,000.00; and to John E. King, the sum of $200.00, all of which “donations,” so characterized in the resolution of the Board, were, as petitioner is advised,- informed and believes, arid so avers, paid out of the corporate funds, to the great wrong' and injury of said corporation, and to your petitioner and other stockholders similarly situated.
That at their annual meeting in 1889, said directors undertook, in the absence of any charter provision, to fix the salaries of the president and vice-president, making the extravagant allowance of $5,000.00 for the office of president, and $2,500.00 for the office of vice-president, said salaries to commence with January, 1889, and to be payable monthly, and that said allowances for salaries were extravagant and unreasonable, considering the character of the employment, and the nature of the services performed, and considering further that said salaries were given to those who were in control of the stock of said corporation, and who practically voted thdmselves the colórate assets, to the great wrong and' injury of said corporation, and of your- petitioner as a stockholder thereof.
That on January 4th, 1890, at a meeting of said directors, a “donation” of $2,000.00 was voted to George A. Peete, as extra compensation for his services as general manager, and which amount, as petitioner is advised, informed, believes and so charges, was paid out of the funds and property of said corporation, to the great wrong and injury of petitioner as a stockholder.
That on January 3rd, 1891, in addition to the salary which said Albert Baldwin was drawing as president, and which was an extravagant allowance for the services rendered, and the duties charged upon him, and operating to the manifest wrong of the corporation and your petitioner, because of its extravagance, the said directors voted a “donation” of $1,000.00 to said Baldwin, a's president, and of $500.00 to John IT. Hanna, as vice-president, and which amounts, as petitioner is advised, informed, believes and so charges, were paid out of the funds of said corporation, to the great wrong and injury of said corporation and of your petitioner.
That he is informed, advised, believes and so charges, that said Albert Baldwin, as president, and John H. Hanna, as vice-president, continued to draw salaries fixed for their services, on the basis of *1390 $5,000.00 for the president, and $2,500.00 for the vice-president, from 1889 down to .1896, and that it was only in 1896 that the salaries of the president and the vice-president of said corporation were reduced to the sum of $100.00 per month, a fair, reasonable and just compensation for services rendered, and all they were legitimately entitled to out of the business and earnings of said corporation.
That the facts herein recited have only recently come to his knowledge, and since he became a stockholder in said corporation; that it would be useless and futile on his part to seek any relief from the Board of Directors in order to have them institute proper proceedings for the recovery of said money unwarrantably and illegally withdrawn from said corporation; that those who were the beneficiaries of said “donations” and salaries voted for the same, they owning a majority of the stock, and controlling said corporation, and have continued to control and direct said corporation as it presently exists/and that, therefore, your petitioner is relieved from demanding of them the institution of proceedings against themselves for the restoration and. restitution of the funds Unwarrantably, unjustifiably and illegally withdrawn from said corporation.
That from 3884 to 1890, the said corporation paid a dividend of twenty per cent, per annum, and created a surplus independent thereof; that it has, from 1892 to date, declared nominal dividends, increasing the surplus ai^d thus augmenting the capital stock without any resulting benefit or advantage to the minority stockholders, but holding them where they can have no voice in the administration of the aifairs of said company, nor make their investment -available or profitable, notwithstanding the great profits earned by said company in the operation of its business; that the action of said Board of Directors jeopardizes the rights of the minority stockholders by the gross mismanagement of the business and in refusing in bad faith to divide thcearnings and profits of said company, and by wasting, misusing and mismanaging the property and funds of said corporation; that in consequence thereof, the rights of the minority stockholders are in imminent danger, and the acts of said Baldwin, Eustis and others, destroy the value of petitioners’ property and his holdings in said corporation, except as to such value as said parties see fit to place upon the same or allow petitioner therefor.
*1391 That, as appears by the records of said corporation, large and valuable assets of said company were sold to a director' thereof at a nominal price, and petitioner is advised, informed, believes and so charges, that said director realized approximately the value of said assets, and that he should be made to account for whatever benefit or advantage he derived in the purchase of said assets, which was to the great wrong and injury of said corporation, and your petitioner and other stockholders similarly situated.
In view of the premises and annexed affidavit, petitioner prays that the Gullett Gin Manufacturing Company, through its proper officer, be cited and notified hereof to appear before this Honorable court and to show cause why a receiver should not be appointed to said corporation, so that the same may be administered for the equal benefit and advantage of all the stockholders and not alone those particularly in charge thereof; why said receiver should not.be vested with such powers of administration as the court may deem best for the interest of all parties, with the right to apply from time to time to the court for directions or the enlargement of his powers, and to institute such proceedings as he may be advised are necessary and proper to recover, for the benefit and advantage of the corporation, any funds, property or assets diverted therefrom, and why said receiver should not proceed to declare out of the surplus earnings of said corporation, after the payment of all just debts, a distribution of the earnings thereof; and petitioner further prays for all further and necessary orders and for general relief.
Defendant first excepted that the plaintiff had no cause of action, and under reservation of the same filed an answer in which, after pleading the general issue and making special denials of different allegations of the petition, averred thel validity of all its acts.
The exception of no cause of 'action was referred to the merits; the case went to trial, and, after hearing, the court rejected plaintiff’s petition and he appealed.
Opinion.
The only party defendant lin this case is the defendant corporation.
The effort of the plaintiff is to show that at various times, beginning in 1885, and particularly between the year 1885 and the year 1891, the Board of Directors of the corporation had voted to themselves, out of *1392 the earning's of the company, donations to an amount of over thirty thousand dollars; that no provision in the charter accorded to the executive administrative officers of the company salaries for their services; that the action of the Board in this matter was without authority, reckless, extravagant, ultra vires, ,-and greatly injurious to the corporation and the stockholders, and that the parties who had received such amounts should be made to return the same, and to show, secondly, that the business of the corporation had been large and valuable, and its profits great; that it had continuously accumulated a surplus from its earnings so that, as would appear by the last report to the stockholders on January, 1st, 1899, it had a surplus over and above its capital stock, based upon estimated values exceeding the sum of one hundred and forty three thousand dollars, thus making the capital stock of the value of $243.00 per share.
That it was the duty of the Board, after making provision for the discharge of the company’s liabilities, to have pro-rattíd and divided' among the-stockholders who had invested their means in the corporation the profits and earnings thereof; that, instead of making the division, the Board of Directors had extended the business of the corporation, and had unjustifiably applied the earnings of the company for that purpose, and in so doing had incurred a heavy debt; that the result of this course had been to prevent the stockholders from obtaining, of late, more than nominal dividends, to cut down the value of the stock'and to greatly prejudice the rights o£ stockholders.
That the course referred to had been followed intentionally and in bad faith to the injury of the minority stockholders.
In view of the premises, the plaintiff maintained that he was entitled to an accounting of his proportion of the profits earned by the corporation, with interest at the rate of five per cent, per annum, from the time when said profits should have been distributed among the stockholders, but which were in bad faith withheld from petitioner and the minority stockholders similarly situated.
The remedy which he declared he was entitled to under the circumstances was the obtaining of such an accounting, not through an action instituted by himself, but through a receiver whom he prayed the court to appoint, “so that the corporation be administered for the equal benefit of all the stockholders, and not alone those particularly in charge thereof.”
*1393 The prayer of the petition relative to the powers and duties of this receiver was, “that he should be vested with such powers of administration as the court might deem best for the interest of all parties, with the right to apply from time to time to the court for directions or the enlargement of his powers, and to institute such proceedings as he might be advised were necessary and proper to recover, for the benefit and advantage of the corporation, all funds, property or assets diverted 'therefrom; and to proceed to declare, out of the surplus earnings of said corporation; after the payment of all just debts, a distribution of the earnings thereof.”
In support of the course which he prayed to be adopted, plaintiff averred “that the facts which he recited had only recently come to his knowledge and since he had become a stockholder in the corporation; that it would be useless and futile on his part to seek any relief from the Board of Directors, in order to have them institute proceedings for the recovery-of said money unwarrantably and illegally withdrawn from the corporation; that those who were the beneficiaries of said donations and salaries had voted for the same, and had continued to control and direct said corporation as it presently exists, and, therefore, he was relieved from demanding of them the institution of proceedings against themselves for the restoration and restitution for the funds unwarrantably, illegally and unjustifiably withdrawn from said corporation.”
It will be perceived that the acts of wrong-doing and mal-administration which the plaintiff sets up, are not advanced contradictorily with the parties charged therewith and for the purpose of obtaining against them, for the benefit of the corporation, such judgment as the facts and the law would warrant, but for the purpose of substantially taking the administration of the affairs of the corporation out of the hands of its elected charter officers, and placing them under a receiver, not with presently defined duties, powers and responsibilities, but with duties and powers to be thereafter fixed by the court.
The- plaintiff does not ask the dissolution of the corporation, the winding up of its affairs, or the removal of the Board of Control. They were to remain in office, but under extraordinary conditions, bound to be attended with troubles, complications and disastrous results, even if such a dual administration would be permissible under the law.
*1394 Precisely why the beneficial legal results for the corporation, which the plaintiff declares he is seeking to obtain, and to which he might be entitled, could not be as fully and completely worked out by himself as a stockholder through proper proceedings, taken contradictorily with all parties in interest, we-can not see.
In plaintiff’s own brief it is said: “A single stockholder can institute suit for the benefit of the corporation where the directors act fraudulently,” and in support of that position he cites Beach on Corporations, 880-881; Fougue vs. Coard, 50 N. J. Eq. (reported in 24 Atlantic Rep., 504).
Minor vs. Belle Ice Company (a Michigan case), 53 N. W., 219; Morawitz on Corporation, Sec. 242; Cook on Stockolders, Sec. 741, and Estuiler vs. Stoel, 47 N. W. Rep., 361, where it was held that a complaint by a stockholder against the corporation and its officers and directors who held a majority of stock, charging- them with fraudulently diverting its property to their own use, by voting themselves salaries, and doing other illegal acts, is sufficient, without averring a demand upon the Board of Directors to correct the same, it would be idle to request them to redress the wrongs they themselves have committed.”
(32 S. E. Rep., 213, is cited as being to the same effect).
Even where a receiver has been appointed, under the law, by the comptroller to take charge of the assets of a national bank, a direct action by an individual stockholder has .been held right and proper where the receiver refuses to act. See note 1 to Section 239 of Morawitz on Corporations, 2nd Ed., where it is said that where the receiver refuses to bring suit against the directors of the bank to recover assets which have been misapplied or lost by misconduct of the directors, a shareholder may bring the suit by making the corporation and the receiver parties together with the directors against whom relief is sought. Brinckerhoff vs. Bostwick, 88 N. Y., 52; S. C. 23, Hun., 237; 99 N. Y., 185.
. We see no ground whatever for the appointment of a special receiver or a receiver as prayed for. (See on this subject Morawitz on Corporations, Sec. 447; Cook on Stock and Stockholders, 926; 33 Conn., 446; 18 H., 331; State of Louisiana vs. Bank of Louisiana, 6 La., 745; 157 U. S., 553; 3 Paige, 222; 7 Paige, 203; 29 Ala., 503).
As that is the only relief - prayed for, it would be useless for us to *1395 decide whether the funds alleged by the plaintiff have been shown to have existed or not, and, if shown, whether they would be of the character attributed to them by the plaintiff.
There are certain matters which it may not be amiss for us to allude to in a general way. Plaintiff is before the court as holder and owner of twenty-five shares of the capital stock of the defendant company, which he acquired from the Mutual National Bank in 1898. At the time, therefore, of this acquisition the action complained of, that the Board of Directors had voted themselves large amounts of money as donations for services rendered as officers of the company, was not of recent date.
It had occurred years before, and so, when plaintiff acquired his stock, the extension of the business of the company, through the application of its earnings to the purchasé of new and additional machinery and appliances, and the creation of the debt referred to, was an already existing condition and fact. The earnings of the company were represented by the improved and extended plant, and by bills receivable and open accounts. There were no monies to divide, and there was a heavy debt to meet.
There could be na division among stockholders until this debt should be met (Faurie vs. Millaudon, 3 N. S., 479). The policy by which the company had bought from time to time new machinery and appliances, instead of operating with the old plant of the Gullett Gin Manufacturing Company which it had purchased at the sale of its assets, and with which the new company had commenced business, might or might not have been judicious, but whether so or not, it was an accomplished, fact when the plaintiff bought his stock. It is not pretended that the price paid for it was more than it was actually worth, or that there was- any false representation as to it by any person. Whether a continuance of the business with the old plant, and on the same basis upon which it had been commenced by the company would have resulted in any earnings to divide, is problematical, and still more problematical if the earnings had been at once divided among stockholders as they were earned. The allegations of the plaintiff’s petition show that the business was ably conducted by the Board of Directors and resulted in a large surplus, and for a number of years in large dividends.
The dividends, though subsequently reduced, were not discontinued, *1396 and the cause of the reduction is explained by the expenditure of the earning's in the improvement and extension of the plant and business. The plaintiff has overlooked the fact that if the yearly earnings had been divided each year between the stockholders, they would, to the extent of the proportion of the same to which the twenty-five shares of stock now owned by himself would have been entitled, have been taken not by himself, but by Taylor, the original owner of that stock, and later by the bank holding the. same, first, as pledges under Taylor, and subsequently as owner by purchase, and the plaintiff has failed to consider to what extent the policy of extension and improvement, which he now condemns, has contributed to the making of the very earnings and profits which he says should have been divided.
It is true thtut that policy may have caused a temporary reduction of dividends, but all-the stockholders stood alike in that respect (the Board of Directors as well as the plaintiff), and while the present dividends have been reduced non constat, but that the future will disclose the wisdom of the course pursued by increasing dividends hereafter.
It is scarcely fair to judge of the correctness of a particular line of policy by selecting the condition of affairs of a corporation on a particular day, disregarding the past and ignoring the future. If matters have reached the point with-this company that its plant is now complete, and that it has been placed in position to operate hereafter without further outlays in That direction, the advantages of the past outlays, not now seen or appreciated, may be made to appear.
' The actual result remains to be seen. So far as this record shows no one other than plaintiff is complaining.
Receivership as a remedy looks rather to the prevention of future injuries than for the redress of past grievances. If plaintiff has just reason to complain of the course pursued by the Board of Control in the past, it strikes us that an injunction to prevent its further continuance would be a remedy more appropriate and proper than a receivership. 157 U. S., 553; 5 N. Y. (Sup.), 305.
The evidence shows that for a .large part of the time during which the Board of Directors voted what are designated as “donations” to some of their number, Taylor, the original owner of the stock, which is now held by the plaintiff, was a member of the Board of Directors, and participated in its action in that respect.
*1397 The amounts so' voted were for services performed for the company by the parties to whom they were voted.
Plaintiff contends that the amounts were voted after the rendition of the services; that the Board of Directors was without authority, under such circumstances, to grant them any compensation; that the action was ultra vires, null and void, .at that time, and it remains null and void.
Defendants’ position is that assuming as a fact (which it does not admit) that the act was not strictly authorized, it was an act not ultra vires of the corporation; that it was not an act beyond the power of the corporation- — itself to do; that, at worst, it would be ultra vires of the Managing Board, that is to say, an act beyond the authority of the Board of Directors, but within the powers of the corporation itself; that it was an act which could have been either originally adopted by a meeting of stockholders, or having been irregularly adopted by the Board of Directors could be legally ratified at a meeting of stockholders, or cured by acquiescence,
It maintains that Taylor having participated in this particular action, was estopped by that fact, as well as acquiescence, from urging anything against it, and that any one holding under or after Taylor would be also estopped, even though the latter might not have been estopped had the action which Taylor participated in or acquiesced in been an act ultra vires in its primary sense, that is to say -an act ultra vires the corporation itself.
We reserve expressing any opinion on this subject until it shall be brought before us for direct adjudication.
Eor the reasons which we have assigned, it is ordered, adjudged and decreed, that the judgment appealed from be and it is hereby affirmed.