77 So.2d 528

Mrs. Louise B. DARMANA et al.

v.

NEW ORLEANS STOCK YARD, Inc., et al.

No. 41616.

Dec. 13, 1954.

Rehearing Denied Jan. 10, 1955.

Tucker & Schonekas, New Orleans, for defendants-appellants.

Oliver S. Livaudais, Jr., Byrnes & Wallace, New Orleans, for plaintiffs-appellees.

LE BLANC, Justice.

A group of minority stockholders of New Orleans Stock Yards, Inc., instituted this proceeding in which they seek injunctive relief from the action of the majority of the Board of Directors of the corporation in having voted certain salaries for its officers which, it is alleged, are an unwarranted outlay of corporate funds and for which the corporation is receiving no consideration. In the alternative it is alleged that if there is consideration, the same is inadequate. They prayed for a temporary restraining order, pending trial of a rule nisi for a preliminary injunction, forbidding the payment of the salaries listed in their petition, and in due course for the preliminary injunction.

The district judge was of the opinion, from the facts appearing in the petition and supported by affidavit, that irreparable loss or damage might result to the plaintiffs and he accordingly granted a temporary restraining order conditioned upon their furnishing bond in the sum of $1,000.

The salaries which plaintiff alleged constitute an unwarranted expenditure of funds and for which the corporation would receive no consideration, consist of the following: Joseph Mereaux, $100 per week; Andrew Hillary, $100 per week; Frank Schnell, $100 per week and L. G. Heier, Sr., $150 per month.

In their petition, plaintiffs alleged that Joseph Mereaux, Frank Schnell, Andrew Hillary, L. G. Heier, Sr., L. G. Heier, Jr., I. J. G. Janssen, Ewell Potts and George Hillary, members of the Board of Directors, all made defendants together with the corporation itself, belong to a group of majority stockholders who have conspired and effected a system whereby the assets of the corporation would be dissipated, in order to defeat the rights of the minority stockholders to dividends on their stock, and waste the assets to such an extent as to materially affect the existence of the corporation and endanger its continued operation.

The plaintiffs furnished a bond in the sum of $1,000 with one of them, Roy Hodges, as principal and John F. Klees, Jr., as surety and the temporary restraining order issued. Defendants then filed a motion to test the surety on the bond and also a motion to dissolve the temporary restrain-

ing order on several alleged specific grounds.

The motion to dissolve the temporary restraining order was not acted on until the hearing of the rule for a preliminary injunction. Neither for that matter was the rule to test the surety on the bond. This rule appears to have been involved in one of the grounds on which the motion to dissolve was based. The district judge refers to this in deciding all matters on the day he handed down reasons for his decision on the rule for the preliminary injunction.

At any rate, the temporary restraining order was extended as required by the injunction law of this state, LSA–R.S. 13:-4064 and was kept in force during the time the rule for the preliminary injunction was put at issue by the answer of the defendants and until it was acted upon by the trial judge. In their answer to the rule as well as in exceptions of no right and of no cause of action which they also had filed, the defendants contested the rights of the plaintiffs to the injunctive relief sought and they also denied the allegations of fact upon which their demands were based. The trial judge rejected their contentions and ruled in favor of the plaintiffs granting them the preliminary injunction as prayed for. The defendants then moved for a suspensive and devolutive appeal to this Court. They were refused a suspensive appeal but granted a devolutive one which they have perfected.

▮ One of the errors complained of is the refusal of the trial judge to have granted defendants their motion to dissolve the temporary restraining order, but it is well settled that an appellate court will not review the action of the district court in refusing to dissolve a temporary restraining order. It cannot do so in face of the positive provision of section 5 of the original injunction act, No. 29 of 1924, now LSA–R.S. 13:4070, that "No appeal shall be allowed from any order granting, continuing, refusing or dissolving a restraining order, * * *." As pointed out in Ducros v. St. Bernard Parish Police Jury, 200 La. 766, 8 So.2d 694, to review and pass on the correctness of the ruling by the district court on such motion would be tantamount to allowing an appeal from the order in plain violation of that section of the law. Like the temporary restraining order in that case, the one in this case expired in accordance with law when the preliminary injunction issued. After that it served no further purpose; it was dissolved by its own limitation, and we are not concerned on this appeal which is from the order granting the preliminary injunction, with the reasons of the district judge why he granted it or why he refused to dissolve it.

Counsel for appellants state that they are aware of the ruling of this Court in the Ducros case, supra, but they urge that we consider the matter in the instant case because the lower court's ruling is so clear-

ly erroneous. That was also one of the reasons why the Court was asked to consider the lower Court's action in refusing to dissolve the order in the Ducros case, another reason being that the defendant was entitled to recover attorney's fees for its wrongful issuance, and still this Court found itself powerless to do so for the reasons which have already been stated.

In considering the merits of the rule for the temporary restraining order we find ourselves confronted with two propositions: The first, whether injunction is the proper remedy to be used in contesting the action of the officers or the board of directors of a corporation in matters such as are complained of in this case, and second, granting that it is, do the facts adduced in the case justify relief by injunction. The district judge resolved both propositions in favor of the plaintiffs.

 It seems to be well established by the jurisprudence of this State as well as that of other jurisdictions that injunction is an appropriate remedy by which minority stockholders in a corporation can seek relief on a complaint by them charging that the directors and officers who hold or control a majority of the stock are illegally diverting and appropriating to themselves, as salaries, the property of the corporation.

In the case of Marcuse v. Gullett Gin Mfg. Co., 52 La.Ann. 1383, 27 So. 846, 851, that was one, among others, of the complaints by a single stockholder against the officers and directors of the corporation on which he predicated his demand for a receivership. In rejecting his demand in the form in which he had made it, the Court stated:

"Receivership, as a remedy, looks rather to the prevention of future injuries, than for the redress of past grievances. If plaintiff has just reason to complain of the course pursued by the board of control in the past, *it strikes us that an injunction to prevent its further continuance would be a remedy more appropriate and proper than a recivership.* Pollock v. [Farmers' Loan &] Trust Co., 157 U.S. [429], 553, 15 S.Ct. 673, 39 L.Ed. 759; Ziegler v. Hoagland [52 Hun 385], 5 N.Y.S. 305." (Italics ours.)

The foregoing statement is approvingly quoted in Carey v. Dalgarn Const. Co., Inc., 171 La. 246, 130 So. 344, 348, following which the Court said:

"What was there said is appropriate here. If the majority stockholders are guilty of paying themselves salaries out of proportion to the services rendered and have paid unto themselves illegal commissions, the plaintiff's remedy is a suit to bring such funds back into the treasury of the corporation *and to prevent future excessive payment by injunction.* It would be disastrous to the business of the corporation to throw it into an expensive receivership." (Italics ours.)

■ There is no doubt that plaintiffs in this case were pursuing the proper remedy when they sought to enjoin the defendants from paying the salaries which are alleged to be an unwarranted outlay of corporate funds and for which the corporation is receiving no consideration, or in the alternative, one that is inadequate.

■ This brings us to the second proposition to be considered on the merits of the rule and that is whether the facts as found in the record warrant the relief asked for by the process of injunction. Before discussing the facts and reviewing the findings of the trial judge, however, it is necessary to determine on which side the burden of proof rests in a case of this kind as that also seems to be a point in controversy. The district judge did not consider it important enough to pass on that question at this time as he thought it was an issue to be decided on trial of the merits. But we think it is important to do so in view of the fact that apparently most of the available testimony for a decision on the merits is already in the record and even though there should be more to be offered it would be well to settle the issue in anticipation of any such contingency.

There seems to be no decision of this Court bearing directly upon the question of the burden of proof in cases of this kind and there appears to be some conflict in the jurisprudence in other jurisdictions. We believe however that there may be some difference in applying the rule of burden of proof depending upon whether the salaries complained of were salaries regularly fixed by the board of directors of the corporation *or salaries which the majority of the board voted to themselves.* In the latter case the burden seems to be on the members who so acted, to show that such salaries were reasonable. The following statement in 13 Am.Jur., Corporations, sec. 1039, we think is pertinent:

"The burden is usually held to be upon the dissenting stockholder attacking the reasonableness of the salaries of the officers, regularly fixed by the directors, of proving that such salaries are excessive and out of proportion to the services. There is authority to the effect, however, *that where the directors vote salaries to themselves, the burden of proof is upon them to show that such salaries are reasonable."* (Italics ours.)

In an annotation in 175 A.L.R. at page 600 there is cited the case of Davids v. Davids, 135 App.Div. 206, 120 N.Y.S. 350, in which as pointed out, "the Court held that directors who voted themselves large increases in salaries were presumed to have acted in their own interests to the prejudice of the corporation and the burden was on them to overcome such presumption." Other cases from the same jurisdiction are cited. In a prior annotation in 44 A.L.R. at page 571, the case of McKey v. Swenson, 232 Mich. 505, 205 N.W. 583, is cited as holding that "the burden is upon the directors

of showing that the salaries voted to themselves, as officers, are reasonable."

So, we now come to the question, which is one of fact: Have the defendant officers of the corporation in this case discharged the burden placed on them of showing that the salaries voted to themselves are reasonable? In other words, do the services rendered by them justify the expenditure of such sums of money as are involved in the salaries fixed by them.

Before reaching his conclusion, the trial judge painstakingly analyzed the testimony, which, it must be said, is very voluminous, and he gave due weight and consideration to it all as well as to many circumstances attending the conduct and the operation of the business of this corporation in the past. Whereas, as stated in his written opinion, prior to the action of the board complained of, the salaries involved did not exist, and there appeared no actual change in the nature of the business of the corporation, and no material or substantial change in the activities which it carried on, he could find no justification for an expenditure of $17,400 annually for additional salaries, especially in face of the possibility that the financial structure of the corporation might thereby be seriously affected.

■ We cannot say that we find manifest error in the findings of the trial judge except in one respect. We think importance must be given to the services rendered by the officers to whom these salaries have been or were to be paid and of their

value to the corporation. With regard to the salary paid to Mr. Joseph Mereaux, as president, we believe that the corporation does receive valuable consideration. With regard to those paid the others, however, we agree with the conclusions of the trial judge that they are not justified. Especially in the cases of Mr. Hillary, first vice-president, and Mr. Schnell, superintendent, it would seem that the services claimed to be rendered by them are very much the same as those that are performed by Mr. Mereaux, the president.

In detailing his activities of a normal day at the stock yards, Mr. Mereaux stated that it begins at eight o'clock when he collects the mail and takes up any correspondence that has to be handled at that time. He then goes on to the receiving docks, checks on the receipts and sees if there are any complaints. He next makes a round of the yards talking to different people, the Bureau of Animal Industry man or the Louisiana Sanitary Board representative. He sees what the men are doing and what, if any, improvements have to be made. In addition, he may have a meeting to attend once or twice a week. He generally leaves between eleven and twelve o'clock when the rush hour is practically over and returns at night when he remains about two or three hours making spot checks to see that there are no cattle jammed in the pens, talking to various shippers of cattle that come in and if anything happens that has to be taken care of, he sees that it is. He works Saturdays and Sundays and

hasn't missed a day since becoming president.

Mr. Hillary, in testifying about his duties, said that he had supervision under Mr. Mereaux of the policies of the company. By that, he stated, he meant general supervision when Mr. Mereaux is not there. When asked how much time Mr. Mereaux spends at the yards, he answers: "More time than any man I have ever seen work for the stock yards. * * * He is there for hours at night that I don't know about and I guess he is there four or five maybe six hours in the day time."

It would seem therefore that there is very little left in the way of supervision for Mr. Hillary to do and as that appears to be what he is principally paid for, we don't think that the services rendered justify a salary of $100 a week in view of the fact that Mr. Mereaux receives the same amount.

It is rather significant that neither Mr. Schnell nor Mr. L. G. Heier, Sr., the two other recipients of the salaries complained of, testified at the trial of the rule. Mr. Schnell is paid $100 per week as superintendent and Mr. Heier, $150 per month as second vice-president. Apparently it was left to Mr. Mereaux to testify as to their duties and with only his testimony to judge of the value of the services rendered by them, we are left with the definite impression that they are all of the same character as are those that are performed by himself, that is, they are all of a supervisory nature

and relate to the general up-keep of the stock yards. "In other words" he is asked, "It is your testimony, you, and Mr. Schnell and the first vice-president all look after repairs of the yards?" To which he answers: "Yes." When we consider that in addition to the salaries paid them, the corporation employs a general manager at a salary of $175 semi-monthly, we have to conclude, as did the district judge with respect to the salaries paid to Mr. Hillary, Mr. Schnell and Mr. Heier, Sr., that the corporation receives no additional consideration and as to those, the injunction properly issued.

We do not agree with him however with regard to the salary that is paid Mr. Mereaux, as president of the corporation. Even the complaining stockholders speak well of the time and attention he devotes to the business and affairs of the corporation and the services he renders. It is argued that those same services were rendered by a former president under a previous administration, without salary, but that furnishes no reason why Mr. Mereaux should not be paid for services that are of value to the corporation and for which a salary has been established. Besides, it is well shown by the record that the former president, now deceased, who worked without pay, indirectly received some benefits and advantages to his personal business as a merchant doing business with the stock yards, which compensated him to an extent as great, probably, as the salary presently paid the president.

For the reasons stated it is ordered that the judgment appealed from, to the extent that it granted an order for a preliminary injunction restraining the payment of a salary of $100 per week to Joseph Mereaux, president of New Orleans Stock Yards, Inc., be and it is hereby reversed, annulled and set aside, and in all other respects the said judgment is affirmed.

PONDER, J., absent.