180 So.2d 831 (1965)
Stanley M. HACKETT et al., Plaintiffs-Appellees,
v.
DIVERSIFIED CHEMICALS, INC., et al., Defendants-Appellants.
No. 1554.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1965.
Davidson, Maux, Onebane & Donohoe, by Joseph Onebane, Lafayette, for defendants-appellants.
Bush & Moresi, by Toxie L. Bush, Jr., Abbeville, for plaintiffs-appellees.
Before TATE, FRUGE, and SAVOY, JJ.
TATE, Judge.
This quo warranto proceeding, LSA-CCP Art. 3901, seeks to invalidate certain actions of the board of directors of Diversified *832 Chemicals, a Louisiana corporation created under our Business Corporations Law, LSA-R.S. 12:1 et seq. The plaintiffs are two of the corporation's directors, and the defendants are the other members of the board and the corporation itself. The defendants appeal from adverse judgment.
The principal issues of this appeal are (a) whether under the Louisiana Business Corporations Law the board of directors may itself elect a director to a newly created position on the board, and (b) whether a member of the board of directors is disqualified because of personal interest to vote upon a resolution dismissing himself from a salaried position with the corporation.
The actions of the board questioned by this suit took place at two special meetings in 1965. Prior to them, and prior to or at the 1964 annual stockholders meeting, the number of directors was fixed at six, the articles of incorporation having provided for between three and nine directors on the board. At this 1964 meeting, the stockholders had (re)-elected six directors to fill these six positions, including the plaintiffs Hackett and Sagrera and four of the five defendant directors.
On March 25, 1965, at a special meeting of the board of directors, a majority of the board voted to increase the number of directors from six to seven, and it also elected R. J. Adams, a defendant herein, to fill the newly created position. The plaintiffs dissented from this action, and they bring this action to question the validity of Adams's election by the board instead of by the stockholders, as well as to invalidate all actions authorized by the vote of this invalidly elected director (including especially the dismissal of the plaintiff Hackett as general manager of the corporation).
(a) Invalidity of election of new director by board instead of stockholders.
The defendants contend that the board was authorized to elect Adams to the newly created position. They rely upon the board's authority under the articles of incorporation to make and alter by-laws with regard to the corporation's management, including the fixing of the "qualifications, classifications, or terms of office" of directors. Article VIII. The defendants also rely upon the board's authority to make bylaws regarding "The number * * * of directors" 12:29(B) (4) of the Louisiana Business Corporations Law, LSA-R.S. 12:1 et seq.
The plaintiffs concede that the board has the right to determine the number of directors. They point out, however, that the statute likewise provides that only the shareholders, not the board, may elect directors, save in certain limited exceptions not here applicable.
We agree with the plaintiffs. Under the unambiguous provisions of the statute, directors of business corporations "shall be elected by the shareholders", Section 34, subd. B (LSA-R.S. 12:34, subd. B), except: (1) the board is authorized to fill vacancies created by death or resignation (only), 12:34(C)(1); (2) in certain instances bondholders may be given the right to elect directors, 12:34, subd. H;[1] (3) the board may fill unexpired terms of previously created directorships, as well as directorships created at or prior to a shareholders meeting if the shareholders themselves fail to *833 fill them by election at their last meeting, 12:34(C) (3).[2]
While the corporate directors are authorized to fill "any vacancy on the board for an unexpired term", a newly created and previously unfilled directorship is not statutorily considered a "vacancy" unless the "shareholders" have increased the authorized number of directors (but failed to fill the position thus created). 12:34(C) (3), set forth in full at Footnote 2. Insofar as the authority under this Louisiana statute of the directors to fill a vacancy, authoritative commentators have noted that "Directors have not the right, under this Act, whether or not so provided in the articles or by-laws, to create vacancies by increasing the number of directors; only the stockholders may do this." Dunbar and Spencer, Guide to Formation of Corporations, Note G(4), reprinted at 19 Tul.L.Rev. 569, 590 (1945) and at 12 West's LSA-Revised Statutes lxxv et seq (1951). (Italics ours.)
In the present case, the statutory power of the board to fill vacancies therefore did not extend to electing a director to fill the new directorship created by the board itself subsequent to the last meeting of the shareholders. This is in accord with the general rule that, in the absence of express provision to the contrary, provisions authorizing the directors to fill a vacancy do not empower the board to select a director to fill a position newly created by itself, since a "vacancy" implies a previous incumbent. Annotation, Newly created directorshipvacancies, 6 A.L.R.2d 174; 1 Hornstein, Corporation Law and Practice, Section 392 (1959); 19 C.J.S. Corporations § 716b(2), p. 33 (1940 volume); 19 Am. Jur.2d Section 1087, p. 532 (1965 volume).
The defendants contend that the plaintiffs are estopped to contest the board's election of Adams to fill the newly created directorship in 1965. They rely upon the plaintiffs' participation in 1963 in a similar method of filling newly created positions on the board. No authority is cited in support of this contention. The plaintiffs, who voted against Adams's election in 1965, cannot in our opinion be held to have ratified this invalid action in 1965 or be estopped to contest it because of their two votes two years earlier concerning other actions of the board. For instance, detrimental reliance is ordinarily an essential element of estoppel (Shirey v. Campbell, La.App., 2 Cir., 151 So.2d 557; Levy v. Bonfouca Hunting Club, La.App., 1 Cir., 136 So.2d 567), and none is shown here.
We conclude that the trial court correctly declared null the election on March 25, 1965 of R. J. Adams as a director of the corporation, together with any action taken by him pursuant to his invalid election as such.[3]
*834 (b) Disqualification (or not) of a director to vote upon a resolution dismissing himself from salaried position with corporation.
At a special meeting of the board on May 3, 1965 following the election of R. J. Adams, by a 4-3 vote a majority of the board dismissed the plaintiff Hackett as Diversified's general manager. The majority included the defendant Adams; if his vote is nullified because of his invalid election, then the motion to dismiss Hackett failed to receive a majority vote and did not pass. The trial court so held, in ruling that Hackett was not validly dismissed as general manager of the corporation.
The defendants allege, however, that Hackett was himself disqualified to vote because of his personal interest in the matter. Therefore, they contend, the resolution dismissing Hackett did carry by a majority of 3-2, that is, if we disregard the votes of Adams as invalid and of Hackett as disqualified.
In so arguing, the defendants rely upon the general principle: "A director who is disqualified by personal interest from voting on a particular matter before the meeting cannot be counted for the purpose of making a quorum or a majority of the quorum, nor for the purpose of determining how many constitute a majority." 19 C.J.S. Corporations § 749, p. 95 (1940 volume). Because of this general principle, it has often been held that officers and directors are disqualified from voting to fix or increase compensation to themselves, unless expressly authorized to do so by the articles of incorporation. 19 C.J.S., cited above, at § 805, p. 199; 19 Am.Jur.2d "Corporations" Section 1407, p. 800 (1965 volume); 1 Hornstein, Corporation Law and Practice, Section 440 (1959).
By reason of this principle, the personal interest of a director was held to disqualify him against abolishing the position he held as salaried officer. Christy v. Laclede-Christy Clay Products Co., Mo.Ct.App., 253 S.W. 106 (1923). Both parties conceded the same principle was applicable to prevent a director from voting against his own dismissal from a salaried position in Pennington v. George W. Pennington Sons, 27 Cal. App. 57, 148 P. 947 (1915). However, in both of these decisions cited to us by the defendants, as explicitly stated in Christy and implicit in Pennington, corporate directors therein could not lawfully vote on matters pertaining to their own salaries, which was interpreted to include a prohibition from voting against the termination of their own salaried services.
No such provision here applies. As authorized by 12:29, subd. A, Diversified's articles of incorporation granted the directors the power, inter alia, to fix their own compensation. Article VIII.
We agree with the trial court that the specific charter provision qualifying the directors to vote compensation to themselves, implicitly includes within its scope the directors' qualification to vote in questions concerning the hiring or termination of themselves in salaried positions with the corporation. This is in accord with the administrative needs of the practice of having corporate officers serve on the board of directors, although of course a vote including an interested director is voidable if illegal or unfair. 1 Hornstein, cited above, Section 440; see also, Darmana v. *835 New Orleans Stock Yard, Inc., 226 La. 897, 77 So.2d 528.
We conclude therefore that Hackett was not disqualified from voting on the resolution concerning his own dismissal. This is the only reason for his disqualification alleged. The resolution to discharge him therefore did not pass, not having received a majority vote and thus having failed by a tie vote of 3-3 (excluding the invalidily elected director from the number voting in favor of Hackett's dismissal).
Having reached this conclusion, it is unnecessary for us to discuss contentions of the plaintiffs that under the articles of incorporation Hackett could not be discharged by less than a two-thirds vote of the capital stock as, allegedly, an "officer" of the corporation.
Decree.
For the foregoing reasons, we affirm the judgment of the trial court annulling both the election of the defendant R. J. Adams as director and also the subsequent dismissal of the plaintiff Hackett as salaried general manager. The defendants-appellants are to pay the costs of this appeal.
Affirmed.
NOTES
[1] LSA-R.S. 12:34, subd. B: "The names, classifications, and terms of office of the first directors may be stated in the articles. Except as provided in Sub-section C(1) of this Section [This provides that the office of a director shall become vacant "if he dies or resigns"], and except in cases which may fall within R.S. 12:32(H) [This section confers upon bondholders voting rights in certain instances], directors, other than those constituting the first directors names in the articles, shall be elected by the shareholders." (Italics ours.)
[2] LSA-R.S. 12:34(C) (3): "The remaining directors, even though not constituting a quorum, may, by a majority vote, fill any vacancy on the board for an unexpired term. However, the shareholders shall have the right, at any special meeting called for the purpose prior to such action by the board, to fill the vacancy. Within the meaning of this Section, a vacancy shall exist in case the shareholders have increased the authorized number of directors, but have failed at the meeting at which such increase is authorized, or at any adjournment thereof, to elect the additional directors so provided for, or in case the shareholders fail at any time to elect the full number of authorized directors." (Italics ours.)
[3] The board is authorized to fill vacancies "in case the shareholders fail at any time to elect the full number of authorized directors". LSA-R.S. 12:34, subd. C, see Footnote 2 above. Both parties agree in this suit that, prior to the 1965 special meeting, the total authorized number of directors was six, and that the seventh directorship was newly created at the meeting. If so, of course, the italicized sentence is not applicable.

We should here note that we were given some pause by a resolution of August 15, 1963, in the record (D-2), which shows that on that date the directors had formally increased their number from six to seven. If so, then presumably the board might validly elect a seventh member in 1965, since the shareholders had failed to fill this previously authorized directorship at their 1964 meeting.
In this suit, however, the defendants expressly plead that the increase of the number of directors to seven was authorized at the meeting of March 25th at which Adams was elected to fill the seventh directorship, Article XVIII of the answer, a position with which the plaintiffs agree. Presumably the 1963 increase in the number of directors from six to seven was rescinded at or prior to the shareholders annual meeting of 1964. The possible applicability of the above-italicized statutory clause is thus not before us.