(115 So. 791)

No. 26588.

**RAPIDES GROCERY CO., Inc., et al. v. GRANT et al.**

Feb. 13, 1928.

*(Syllabus by Editorial Staff.)*

1. Corporations ⊕⟶332—Directors, permitting stock to be issued for property of less value than par value of stock, become personally liable to creditors to amount equal to unpaid balance (Act No. 267 of 1914, § 17; Const. 1898, art. 266).

Under Act No. 267 of 1914, § 17, and Const. 1898, art. 266 (Const. 1921, art. 13, § 2), if directors permit stock to be issued for property of less value than par value of stock, such directors become personally liable to creditors of corporation for any loss sustained by creditors to an amount equal to unpaid balance on stock.

2. Corporations ⊕⟶232(3)—Where stock is issued for property of less value than par value of stock, subscribers become personally liable to creditors to amount equal to unpaid balance (Act No. 267 of 1914, § 17; Const. 1898, art. 266).

Under Act No. 267 of 1914, § 17, and Const. 1898, art. 266, where stock is issued for property of less value than par value of stock, subscribers become personally liable to creditors of corporation to an amount equal to unpaid balance on stock.

3. Corporations ⊕⟶232(3), 332—Directors and stockholders cannot escape liability to creditors, where stock is exchanged for property not worth par value because property was listed and appraised as required (Act No. 267 of 1914, §§ 3, 17; Const. 1898, art. 266).

Defendants, neither as directors nor as stockholders, could escape liability under Act No. 267 of 1914, § 17, where stock was issued for property of less value than par value of stock in violation of Const. 1898, art. 266, because of fact that forms required by Act No. 267 of 1914, § 3, were complied with in listing

and appraising property given in payment of stock.

4. Corporations ⊕⟶232(3), 332—Neither managers nor subscribers can claim, as against creditors, valuation of property exchanged, fixed at time stock was issued, was conclusive (Act No. 267 of 1914, §§ 3, 17; Const. 1898, art. 266).

Where stock is issued for property of less value than par value of stock in violation of Act No. 267 of 1914, § 17, and Const. 1898, art. 266, neither managers of corporation nor its subscribers can be permitted to claim, as against creditors, that valuation fixed in report under Act 267, § 3, at time stock was issued, is conclusive, and not open to inquiry thereafter.

5. Corporations ⊕⟶232(3), 332—Managers and subscribers cannot urge as against creditors that stock exchanged for property not worth par value was void (Const. 1898, art. 266).

Where stock is issued for property of less value than par value of stock, neither managers nor subscribers can be permitted to urge, as against creditors of corporation, that stock was issued in violation of Const. 1898, art. 266, and hence null and void.

6. Corporations ⊕⟶254—Creditor cannot proceed directly against stockholder for unpaid balance of subscriptions until corporation's insolvency is shown (Act No. 267 of 1914, § 13).

Under Act No. 267 of 1914, § 13, before creditor of corporation can proceed directly against stockholder to recover unpaid balance of stock subscriptions, insolvency of corporation must be made to appear either judicially or by judgment obtained against corporation followed by ineffectual attempt to collect judgment.

7. Corporations ⊕⟶254—Receivership proceeding was "insolvency proceeding" within statute relating to action against stockholder for unpaid balance of subscriptions (Act No. 267 of 1914, § 13).

Receivership proceeding by which property of corporation was sold, and proceeds distributed among creditors, and receiver discharged, was "insolvency proceeding" within meaning of Act No. 267 of 1914, § 13, providing that, except in case of insolvency or bankruptcy proceedings, no action to recover unpaid balance of stock subscriptions shall be brought against stockholder until judgment has been recovered against corporation, and execution returned unsatisfied.

8. Corporations ⚖268(1), 360(1)—Creditors' petition against stockholders and directors for unpaid balance on stock subscriptions, alleging corporation was placed in receiver's hands, disclosed cause of action (Act No. 267 of 1914, §§ 13, 17; Const. 1898, art. 266).

Petition of creditors of corporation against stockholders and directors, alleging that directors had issued to themselves stock for property of less value than par value of stock, in violation of Act No. 267 of 1914, § 17, and Const. 1898, art. 266, and that corporation was insolvent, and was placed in hands of receiver, *held* to disclose cause of action under Act No. 267 of 1914, § 13, although there was no allegation that plaintiffs had obtained judgment against corporation, and had issued execution which had been returned unsatisfied, and did not allege that insolvency or bankruptcy proceedings had been taken against corporation other than receivership proceedings mentioned.

9. Corporations ⚖264, 356—Right to recover for unpaid subscriptions to stock against directors and stockholders is prescribed by five years from exchange of stock for property (Const. 1898, art. 266; Act No. 267 of 1914, § 3).

Under Act No. 267 of 1914, § 3, right of creditors to inquire into validity of transaction whereby directors issued to themselves stock for property of less value than par value of stock, in violation of Const. 1898, art. 266, and of the act, and to recover loss sustained by reason thereof against both directors and stockholders, is prescribed only by five years to date from time directors received property for stock.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; Leven L. Hooe, Judge.

Suit by the Rapides Grocery Company, Inc., and others, against R. H. Grant, Sr., and others. Judgment for defendants, and plaintiffs appeal. Judgment annulled and reversed, and case remanded.

B. T. Dawkins and Hawthorn & Stafford, all of Alexandria, for appellants.

Overton & Hunter, of Alexandria, for appellees.

THOMPSON, J. The three defendants father and two sons, by notarial act, formed and constituted a corporation, under the name and style of R. H. Grant, Inc., for the purpose of conducting a wholesale or retail mercantile business at the town of Boyce, in the parish of Rapides.

The capital stock was fixed at $60,000, divided into 600 shares, of the par value of $100 each, all of which, the charter recites, was subscribed and paid for by the three signatories, as follows: R. H. Grant, 420 shares; O. E. Grant, 179 shares; and R. H. Grant, Jr., one share.

The three incorporators were constituted the first board of directors, with R. H. Grant, president, R. H. Grant, Jr., vice president, and O. E. Grant, secretary and treasurer.

Two days after the charter was signed, the board of directors, by resolution, authorized the president and vice president to accept from R. H. Grant the stock of merchandise then situated in the store of said Grant at a valuation of $40,000, and to issue to him for said stock of merchandise stock certificates of the corporation for that amount.

The board also authorized the issuance to said R. H. Grant the other 20 shares subscribed for by him in consideration of his good will, and that of O. E. Grant, appertaining to the mercantile business theretofore conducted at Boyce, which good will the father and sons appraised at $20,000.

No consideration whatever appears to have been received by the corporation for the 179 shares of stock issued to O. E. Grant, nor for the one share issued to R. H. Grant, Jr., except the good will appertaining to the previously conducted mercantile business at the town of Boyce.

Some time in the year 1922, the corporation became involved in debt, and was placed in the hands of a receiver appointed by the court. All of the available assets of the corporation, including stock of merchandise, furniture, and fixtures, notes and accounts, and good will, were sold by the receiver to O. E. Grant at the price and sum of $2,350.

This amount appears to have been insufficient to pay more than 10 per cent. on amounts due ordinary creditors, after paying the preferred creditors.

Having disposed of all of the assets of the corporation, the receiver made application to the court to be discharged, and which the court granted.

This suit is brought by some fourteen ordinary creditors, whose claims aggregate about $4,000.

The suit is brought against the three defendants as directors and stockholders of the corporation, under the provisions of Act 267 of 1914.

It is alleged that the value of the stock of merchandise which was received by the corporation for the 400 shares of stock issued to R. H. Grant was grossly inflated; that it was an old stock of goods which had been permitted to run down, and was worth not more than 50 per cent. of its cost, and was later appraised by disinterested appraisers at less than 50 per cent. of its cost.

It is further alleged:

That the item of good will, for which 200 shares of the stock were issued to the incorporators, was of no value, and utterly worthless, and that therefore all of said stock was issued by the defendants to themselves in violation of the provisions of Act 267 of 1914.

That in violation of the aforesaid act, and in violation of article 266, Constitution of 1898 (section 2 of article 13, Constitution of 1921), said defendants, as directors, issued to themselves the stock of the corporation of the par value of $60,000 for property worth not exceeding $10,000, and that, by reason thereof, and because of their neglect of duty toward the corporation, said directors are liable under the provisions of Act 267 of 1914 jointly, severally, and in solido to your petitioners as creditors of said corporation for the losses sustained by them, and which losses are represented by the indebtedness due them by said corporation as alleged.

It is further alleged:

That the defendants are liable in solido for the debts due petitioners, because they combined and conspired and associated themselves together for the purpose of illegally holding themselves out to the public, and especially to petitioners, as having a capital stock of $60,000, thereby perpetrating fraud on your petitioners, and thereby gaining from petitioners and others credit which would not otherwise have been granted.

That petitioners sold to said corporation goods, wares, and merchandise after the corporation had been organized to the respective amounts as previously set forth on the faith of the representation that the stock of said corporation was issued according to law and for a legal and valid consideration.

It is further alleged that the corporation was insolvent, was placed in the hands of a receiver; that the claims of petitioners could not be placed in judgment, but that the validity of petitioners' claims were recognized by placing them in the receiver's account.

It is further alleged that demand was made on the receiver to sue said stockholders, directors, and incorporators in behalf of the corporation, for the benefit of the creditors, to recover the value of the stock transferred and issued to them, for which no adequate and sufficient value was received by said corporation, but that the receiver failed and refused to bring said suit.

The prayer was for judgment in petitioners' favor, to the extent of their respective claims for the amounts of the difference between the par value of the stock subscribed for and the real and actual value of the property given for said stock, or, in the alternative, for judgment for said amount in favor of the corporation for the benefit of the creditors.

Several exceptions to the petition were filed, including an exception of no cause of action, all of which were overruled, except

the last named, which was sustained, and the plaintiffs'' suit dismissed.

The exception of no cause of action is grounded on the contention that there is no legal liability on the stockholders to pay cash for stock received by them under a contract to deliver merchandise and good will, and no liability to the creditors on the part of the directors for failure to collect the equivalent for the stock issued. That an action of that character, if any exists, can only be brought by the corporation itself, or its legal representatives. And, further, that, if any such action exists in favor of the creditors of a corporation, they can only be exercised after they have obtained judgment against the corporation, and have exhausted all legal remedies to collect such judgment, save and except only where the corporation in appropriate proceedings has been judicially declared to be insolvent or bankrupt.

Article 266, Constitution of 1898 (section 2, article 13, Constitution of 1921), which was in effect when the stock here involved was issued, provides that no corporation shall issue stock except for money paid, labor done, or property actually received, and that all fictitious issue of stock shall be void.

In considering the subject of this article, this court held in Webre v. Christ, 130 La. 450, 58 So. 145, that, under said article, the value of the property or labor received in payment of a stock subscription must be equal to the face value of the shares, and the subscriber is liable to the creditors of the insolvent corporation for the difference between the value of the property given in payment and the par value of the shares.

And this seems to be the prevailing rule in other jurisdictions, as noted in 14 Corpus Juris, p. 961.

"By this rule, with slight qualifications in some states, one who subscribes for or receives stock of a corporation must pay therefor the par value thereof, either in money or money's worth, so that the real assets of the corporation, at the outset, at least, shall square with its books; and therefore, whenever, whether by fraud, accident or mistake, the true value of the property, labor or services received in payment does not equal the par value of the stock, it is deemed unpaid to the full extent of the difference, and the holders are liable to or for the benefits of creditors of the corporation for this difference." ·

Section 3, Act 267 of 1914, provides:

"That where subscriptions to the capital stock of a corporation organized under this act consist, in whole or in part, of property or good will, there must appear in, or be annexed to, the articles of incorporation and be read in connection therewith, an accurate detailed and itemized description of such property, as to amount, location, extent, character and state of improvement, together with a statement of its value as appraised by the directors, and a statement of the value placed upon any good will included in the capital stock."

Section 17 of the act provides:

"That if stock be issued for property in violation of the provisions of this act, * * * or if any report or statement or public notice shall not be made as required by law, or if made, shall be *false* in any material representation, the directors of such corporation voting or assenting thereto shall be jointly and severally *liable to the creditors of the corporation* for any loss or damage arising therefrom."

In the light of the authorities we have quoted, and of the plain provisions of the act of 1914, it is perfectly obvious that there is a liability to the creditors on the part of both directors and shareholders whose stock has been issued to subscribers and has not been wholly paid for, either in money, property, labor, or services.

[1] Therefore, if directors permit stock to be issued for property of less value than the par value of the stock, such directors become personally liable to the creditors of the corporation for any loss sustained by such creditors to an amount equal to the unpaid balance on the stock.

[2] And the subscribers, likewise, become personally liable to the creditors of the cor-

poration to an amount equal to the unpaid balance on the stock.

In this suit the defendants are sued in their dual capacity as directors and as subscribers.

It needs no argument to sustain the proposition that stock issued by the directors and received by the subscribers for property for a less value than the par value of the shares is in violation of the letter, as well as the spirit, of the law.

[3] The defendants, neither as directors nor as stockholders, can escape the statutory liability, because of the fact that the forms required by the statute were complied with in listing and appraising the property given in payment of the stock.

Such action could not be binding on the creditors of the corporation.

[4] Neither the managers of a corporation nor its subscribers can be permitted to claim, as against the creditors, that the valuation fixed at the time the stock was issued was conclusive, and not open to inquiry thereafter.

[5] Nor can such managers or subscribers be permitted to urge that the stock was issued in violation of article 266 of the Constitution, and hence null and void. Forstall v. Consolidated Association, 34 La. Ann. 775.

We now come to the contention that the plaintiffs have no cause of action, since they do not allege that they have obtained judgment against the corporation, and have issued execution, which has been returned unsatisfied, and do not allege insolvency or bankruptcy proceedings have been taken against the corporation.

Section 13 of Act 267 of 1914 provides:

"That except in case of insolvency or bankruptcy proceedings, * * * no action to recover an unpaid balance of stock subscriptions shall be brought against any stockholder until judgment has been recovered against the corporation and an execution returned unsatisfied in whole or in part."

No one will question the proposition that a creditor of a corporation, even under the statute under consideration, has no cause of action against the stockholder for balance due on subscription to stock so long as the corporation itself is solvent and suable.

The section of the act we have just quoted contemplates that the corporation must be insolvent, and that fact must appear either by a vain effort on the part of the complaining creditor to execute his judgment against the corporation or by bankruptcy proceeding or some insolvency proceeding known to the law, before such creditor can bring his suit against the individual shareholders.

We are not prepared to hold, and we do not hold, that a creditor of a corporation can maintain an action against the shareholders of such corporation for unpaid subscriptions on the bare allegation that such corporation is insolvent.

[6] The insolvency of the corporation must be made to appear, either judicially or by judgment obtained, against the corporation, followed by an ineffectual attempt to collect such judgment, before the creditor can proceed directly against the stockholder.

We are of the opinion, however, that the requirements of the statute have been met fully in this case, and that the plaintiffs, in their petition, have alleged all that is necessary to hold the defendant liable, both as directors and as subscribers to the capital stock of the corporation.

The corporation was involved in debt. It was placed in the hands of a receiver, who administered its affairs as an insolvent corporation. The property of the corporation was sold by the receiver, and brought less than amount sufficient to pay 10 per cent. on the claims of the ordinary creditors. Having wound up the insolvent estate, the receiver was finally discharged by the court.

The corporation thereafter was no longer

able to operate as a going concern. It no longer had any property to administer, but a large proportion of its creditors remained unpaid.

[7] The receivership proceeding was therefore an insolvency proceeding within the meaning of the statute. There was no other kind of insolvency proceeding known to the laws of this state at the time of the use of those words in the statute.

[8] After the corporation was placed in the hands of the receiver, the creditors could not have executed a judgment against the corporation by seizure of its property, which was under the control of the court.

It would have been a vain and useless proceeding for the creditors to have obtained judgments and have gone through the idle formality of having execution issued and returned unsatisfied, after the affairs of the corporation had been administered as an insolvent concern, and the receiver discharged.

Our conclusion is that the plaintiffs' petition discloses a cause of action against the three defendants in their capacity both as directors and as stockholders.

[9] In this court the defendants have filed a plea of prescription of one year against all of the demands of the plaintiffs, and especially the demand based upon the alleged conduct of defendants as directors.

In a supplemental brief, filed by defendants since the case was submitted, the plea of prescription is discussed only in its relation to the demand against the defendants in their capacity as directors of the corporation.

The theory upon which the prescription is based is that the action as against the defendants as directors is one arising ex quasi delicto and not ex quasi contractu.

Counsel for defendants cite, among others, the recent case of Smalley v. Bernstein, 115 So. 347,[1] the opinion in which was handed down on October 31st.

It is true the court did hold in that case that the claim of the creditors of a corporation against its directors for damages sustained because of dividends unlawfully paid is one arising "quasi ex delicto and not ex contractu or quasi ex contractu," and hence is governed by the prescription of one year.

That was a suit, however, by a trustee in bankruptcy, and not by a creditor of the corporation, and the court found that under the law the demand made by the trustee was not an asset of the corporation, and there was no liability on the part of the defendants to the corporation.

In the instant case, it is the creditors suing directly in their own right to enforce the liability provided by the statute against the defendants as directors and as stockholders, against them as directors for having issued to themselves shares of stock not fully paid for, and against them as stockholders for the unpaid balance due on the stock received by them.

There seems to be a conflict between the ruling in the Bernstein Case and that of La Grone v. Brown et al., 161 La. 784, 109 So. 490, which we shall not attempt, at this time, to reconcile, if, indeed, it can be reconciled. It suffices to say that in neither case were the creditors of the corporation suing the directors, and whatever might have been said in either case as to whether the liability of stockholders to the creditors should be regarded as arising from a contract or a tort was not necessary to a decision of the case, and, therefore, can have little pertinent application to the instant case.

But whether there is a contractual or fiduciary relation between the directors of a corporation and its creditors, or whether a special statutory liability can be regarded as arising ex quasi delicto or ex quasi contractu, is of no significance in this case.

[1] Ante, p. 1.

The statute of 1914, which imposes a liability upon the directors of a corporation in favor of the creditors for issuing stock in violation of the act, fixes the time within which an action shall be brought against such directors in cases such as the one here presented.

The last clause of section 3 of the statute declares that:

"The right to inquire into or recover for unpaid subscriptions to stock resulting from alleged excessive values placed on property, exchanged therefor, shall be prescribed by five years from the date on which the property was transferred to the corporation."

The prescriptive term is applicable to the action against the directors for having illegally appraised the property received in payment of the stock, as well as to the action against the stockholders resulting from the same illegal transaction.

There were two contracting parties, the directors, representing the corporation, and the subscribers. It was the directors who appraised the property and issued the stock on the basis of said appraisement.

Therefore the right to inquire into the validity of that transaction and to recover the loss sustained by reason thereof against both the directors and the stockholders is prescribed only by five years to date from the time the directors received the property for stock.

The five years had not run when this suit was filed. Hence the action was not prescribed.

The judgment appealed from is annulled and reversed, and the exception of no cause of action is overruled. The plea of prescription is likewise overruled, and the case is remanded to be proceeded with according to law.

OVERTON, J., recused.

---

(115 So. 796)