142 So. 696

**RAPIDES GROCERY CO., Inc., et al. v. GRANT et al.**

No. 31058.

May 23, 1932.

See, also, 173 La. 367, 137 So. 64.

Hawthorn, Stafford & Pitts and Bruton T. Dawkins, all of Alexandria, for appellants.

Overton & Hunter, of Alexandria, for appellees.

ODOM, J.

R. H. Grant, Sr., and his two sons, R. H. Grant, Jr., and O. E. Grant, organized a mercantile corporation in 1920 under the name of R. H. Grant, Inc., with capital stock fixed at $60,000, divided into 600 shares of the par value of $100. The stock was paid for in property and good will transferred to the corporation.

The 600 shares of stock were distributed among these parties as follows: to R. H. Grant, Sr., 420 shares; to O. E. Grant, 179 shares; and to R. H. Grant, Jr., 1 share. The corporation engaged in business immediately after its organization, and soon thereafter became involved in debt, failed some two years later, and a receiver was appointed.

These plaintiffs, more than a dozen in number, are creditors of the corporation. They filed their claims with the receiver, but were not paid in full because the amount realized by the receiver from the sale of the corporate assets was insufficient. By the present suit, they seek judgment against the said R. H. Grant, Sr., R. H. Grant, Jr., and O. E. Grant, individually and in solido, on the alleged ground that they violated the provisions of Act No. 267 of 1914 in the organization of the

corporation in that they permitted stock to be issued for property of less value than the par value of the stock. Section 17, Act No. 267 of 1914.

The defense is that the property transferred to the corporation in payment of the stock issued had a value equal to if not exceeding the par value of the stock.

Plaintiffs prosecute this appeal from a judgment rejecting their demands.

Defendants, in limine, excepted to plaintiffs' petition on the ground that it set out no cause of action. This exception was sustained by the trial court, and plaintiffs appealed to this court. We reversed the judgment and remanded the case to be tried on its merits. See Rapides Grocery Co. et al. v. Grant et al., 165 La. 593, 115 So. 791.

The only question now before the court is whether the property which these defendants transferred to the corporation as consideration for the shares of stock issued to them had a value equal to the par value of the stock.

1. The corporation referred to was organized under Act No. 267 of 1914, p. 521. Under the provisions of that act, those who organize such corporations as it authorized may transfer to the corporation property in exchange for the stock they receive. Section 3 of the act provides that, in case property is exchanged for stock, there must appear in or be annexed to the articles of incorporation and be read in connection therewith:

"An accurate detailed and itemized description of such property, *as to amount, location, extent, character and state of improvement*, together with a statement of its value as appraised by the directors, and a statement of the value placed upon any *good will included in the capital stock*." (Italics ours.)

Attached to and recorded with the articles of incorporation is a statement of the property which R. H. Grant, Sr., transferred to the corporation. It is itemized as follows:

| | |
|---|---:|
| Dry goods and notions | $12,000.00 |
| Shoes | 8,000.00 |
| Men's clothing and furnishings | 6,000.00 |
| Groceries | 4,000.00 |
| Feed stuff | 2,000.00 |
| Hardware and crockery | 2,500.00 |
| Medicines | 200.00 |
| Auto supplies | 650.00 |
| Fixtures | 4,650.00 |
| Total | $40,000.00 |

There is also attached to and recorded with the charter, the following resolution adopted by the board of directors:

"Boyce, Louisiana, June 28, 1920.

"Be it resolved by the Board of Directors of R. H. Grant, Inc., that the Vice-President, R. H. Grant, Jr., be and he is hereby authorized for and on behalf of this corporation to accept a transfer from R. H. Grant of the stock of merchandise now in the store-house of R. H. Grant, Boyce, Louisiana, the list of which is hereto attached and made a part hereof, and which said merchandise be and the same is hereby appraised by this Board of Directors in the sum of Forty Thousand ($40,000.00) Dollars.

"Be it Further Resolved by the Board of Directors, etc., that the good will of R. H. Grant, Sr., and O. E. Grant, transferred to this corporation, is appraised by the Board

of Directors in the sum of Twenty Thousand ($20,000.00) Dollars."

2. The burden of plaintiffs' complaint is that these defendants were guilty of fraud in the organization of the corporation; that the property transferred by R. H. Grant, Sr., while appraised at $40,000, was not in fact worth more than $20,000, and that the good will of R. H. Grant, Sr., and O. E. Grant, which was appraised at $20,000, had, in fact, no value at all, and, lastly, that the stock of merchandise transferred ·by R. H. Grant, Sr., was not itemized as the act requires.

The fraud attributed to these defendants is that they placed a highly inflated value upon the property transferred, and that the so-called "good will" which they accepted as property in exchange for stock was, to their knowledge, utterly worthless. As the alleged fraud relates only to the value of these properties, we shall discuss the points under one heading.

3. At the time this corporation was organized, R. H. Grant, Sr., was considerably advanced in years. He had been engaged in the mercantile business for a long period of time and had been successful. He was highly respected and his credit was good. No reason is suggested, and apparently there was none, why he should have intentionally inflated the value of the stock of merchandise which he transferred to the corporation. He testified, and it is not denied, that a mercantile corporation capitalized at $60,000, as this one was, would have no better credit than one capitalized for a less amount. So that a motive for overcapitalization seems to have been lacking. Furthermore, this was a family affair. All the stock was taken by

him and his two sons. No outside capital was needed, and none was solicited.

As to the value of the stock of merchandise transferred by R. H. Grant, Sr., to the corporation, nine witnesses, including Mr. Grant, were called and testified. Mr. Grant estimated the value of his stock and fixtures at $52,000, the estimate of O. E. Grant was $40,000, that of Richard Rachel was $45,000, that of W. B. Eversull was $45,000, that of T. W. Eversull $45,000; Hugh Hickman said the merchandise and fixtures were worth approximately $47,500, Philip Henderson valued them at $50,000, and E. V. Rachel at $45,000. The stock and fixtures were appraised by the board of directors at $40,000.

Of the above-named witnesses, all of them, except one or two, were either relatives or family connections of R. H. Grant, Sr., or had, in time, been employees of his. Counsel for plaintiffs suggest that these witnesses were, for the reasons stated, biased. Possibly they were. But there was no attempt made to impeach the veracity of any of them, and no witness was called by plaintiffs to dispute their estimates. We cannot assume that they perjured themselves in order to favor their relative or friend.

Mr. J. W. Beasley, a public accountant, not related to or connected with the Grant family, testified that he had examined an inventory made by Mr. Grant on January 1, 1930 (some six months prior to the organization of the corporation), his books showing what goods were purchased and what sold from January 1 to June 25, 1920, and that with this data he found that Mr. Grant should have had on hand on June 1 (the corporation was organized on June 26) a stock amounting to $47,292.29.

■ To substantiate their allegations that the value of the stock had been overestimated, plaintiffs called the assessor who testified that Capt. Grant's stock of merchandise was assessed at $9,000 in 1919, $9,000 in 1920, and $10,000 in 1921. This proves nothing as to the actual value of the stock. The tax commission and assessors have rules for making such assessments, but it is common knowledge that these rules are more often breached than observed.

This corporation went into the hands of a receiver some two years after its organization. Plaintiffs called Mr. J. E. Ray, who appraised the stock and fixtures for the receiver. He testified that the fixtures and furniture were not appraised, but he did not know the reason. He said, however, that the fixtures were worth from $3,000 to $5,000, but he placed no value on the furniture. He said the inventory furnished him (he did not make it) showed merchandise, not including furniture, amounting to $8,060.01, which he appraised at $4,000. It is shown that there were accounts due the corporation amounting to approximately $2,000, making the total assets of the concern, not including the furniture and fixtures, slightly in excess of $10,000. The corporation owed debts amounting to $19,000.

■ We agree with counsel that there was an "amazing shrinkage" of values from 1920 to 1922. But this is not pertinent to the issue involved. The question is whether the stock and fixtures transferred to the corporation were worth $40,000 when transferred. What the stock of merchandise owned by the corporation was worth at the time it was placed in the hands of a receiver is beside the question.

■ The testimony shows beyond question that the stock transferred to the corporation was worth, at the time of the transfer, the appraised value. This is shown, not only by defendants' witnesses, but by Mr. Ray, who was called by plaintiffs. He said Mr. Grant carried a very large stock in June, 1920, and he estimated its value at $35,000 to $45,000.

4. The "good will" of Capt. R. H. Grant, Sr., and of O. E. Grant was transferred to the corporation and was appraised by the board of directors at $20,000. These parties had been engaged in business in Boyce for a number of years, and R. H. Grant, Sr., bore an exceptionally good reputation. Not so much was said about O. E. Grant, but it is shown that he had been in business there also.

"Good will," as defined by Lord Eldon, means nothing more than the probability that the old customers will resort to the old place.

"Good will is the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, or from celebrity or reputation for skill or affluence or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices." 4 Words and Phrases, First Series, 3128.

Section 3, Act No. 267 of 1914, under which this corporation was organized, authorizes the transfer of "good will" to the corporation as property for which stock may be issued, and requires that a "statement of the value placed upon any good will included in the

capital stock" must be annexed to the articles of incorporation and read in connection therewith. Such a statement was attached in this case.

Counsel for plaintiffs in their brief say:

"We readily concede that the good will of an individual or of a business concern is property, and is a kind of property which may be bought and sold. However, it is subject to the same limitations as to value, etc., as to the organizers, directors, etc., of a corporation as is any other kind of property. Neither the one nor the other may be sold to a corporation by a subscribing stockholder for a sum greater than its value."

Counsel then proceed to argue that the good will transferred was not in fact worth $20,-000. They do not seriously deny that the good will of R. H. Grant, Sr., was a valuable asset to the corporation. But they point out that, so far as the record discloses, O. E. Grant, put nothing into the corporation except his good will, and that the record does not show that his good will was worth $17,-900, the amount of capital stock issued to him.

Counsel are in error in assuming that the good will of O. E. Grant was appraised at $17,900. We quote the following from the resolution of the board of directors attached to the charter:

"Be it further resolved by the Board of directors, etc., that the good will of R. H. Grant, Sr., and O. E. Grant, transferred to this corporation, is appraised by the board of directors in the sum of Twenty Thousand ($20,000.00) Dollars."

There is nothing to show the value which the directors placed upon the good will of

O. E. Grant. But it is assumed by counsel that, in as much as it is not shown that he transferred any other property, it must have been considered that his good will was worth as much as the stock issued to him. It is further pointed out that it is not shown that R. H. Grant, Jr., paid anything for the one share of stock issued to him.

The question whether O. E. Grant and R. H. Grant, Jr., paid full value for the shares of stock issued to them is not pertinent to the issue here involved. The pertinent issue is whether all the property transferred to the corporation in exchange for the 600 shares of stock issued was worth the par value of all the stock which was $60,000. If it was, then all the stock was paid for in property transferred, and it does not matter whose property was transferred, or who paid for it. If all the stock of a corporation is fully paid, it may be distributed among the incorporators as they see fit. One of the incorporators may advance all the capital or transfer all the property necessary to pay for the stock issued, and, by private agreement or arrangement with the others, the stock may be allotted or distributed according to such arrangement. The test is whether all the stock was fully paid and not to whom it was issued.

The testimony shows that the good will or "following," as some of the witnesses expressed it, of R. H. Grant, Sr., and O. E. Grant, which was appraised together at $20,-000, was well worth that amount. Two of plaintiffs' three witnesses, Mr. Ray and Mr. Stafford, said the good will was not overvalued. The other, Mr. Williams, thought the appraisement excessive, but would place no estimate upon it. Defendant called eight

witnesses, six of them saying that it was well worth that amount, one saying that it was worth $17,500 and the other that it was worth $15,000.

5. We find no merit in the contention that in listing the stock of merchandise transferred to the corporation there should have been included an itemized inventory of the stock showing each article included, that is, the number of pairs and the kind of shoes, the number, kind, size, and separate value of each suit of clothes, etc. Section 3 of Act No. 267 of 1914 cannot be interpreted to mean that. It provides that, where subscriptions to the capital stock consists of property, "an accurate detailed and itemized description of such property, *as to amount, location, extent, character and state of improvement,*" shall be attached and read in connection with the articles of incorporation. (Italics ours.)

The statement attached showing "dry goods and notions" $12,000, shoes $8,000, men's clothing and furnishings $6,000, groceries $4,000, etc., was a sufficient "itemized description of such property as to amount," etc.

We find no error in the judgment appealed from, and it is therefore affirmed, with all costs.

OVERTON, J., recused.