## CASES ARGUED AND DECIDED IN THE SUPREME COURT OF LOUISIANA

AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1927

(115 So. 347)

No. 27654.

**SMALLEY et al. v. BERNSTEIN et al.**

Oct. 31, 1927. Rehearing Denied Jan. 18, 1928.

*(Syllabus by Editorial Staff.)*

1. **Bankruptcy** ⬉303(3)—**In bankruptcy trustees' suit, evidence held to show that defendants were not members of conspiracy to organize oil corporation, sell property at excessive valuation and loot treasury.**

In action by trustees in bankruptcy of oil corporation to recover money on ground that defendants had entered conspiracy to organize corporation, sell property at excessive valuation, loot treasury, and finally recover property sold, evidence *held* sufficient to show that such conspiracy did not exist.

2. **Corporations** ⬉30(2)—**Promoter stands in fiduciary relation to corporation and subscribers.**

Promoter stands in fiduciary relation to corporation he is promoting when it comes into existence and to subscribers prior to its creation, and in dealings with corporation he must exercise utmost good faith.

165 LA.—1

3. **Bankruptcy** ⬉145(1)—**Defendants held not "promoters" of corporation incorporated by others and not liable as promoters to corporation's trustees in bankruptcy.**

In action by trustees in bankruptcy of oil corporation to recover money from defendants on ground that, as promoters, they did not exercise good faith, defendants *held* not "promoters," where company was incorporated by others though they were subsequently elected to board of directors, since promoters are persons who bring about incorporation and organization of corporation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Promoter.]

4. **Damages** ⬉120(1)—**Measure of damages for breach, by one selling property to corporation and taking stock, of agreement not to sell such stock, is extent of injury sustained.**

Where defendants selling property to oil corporation and taking stock in return agreed not to sell such stock, measure of damages for breach of such agreement is extent of injury sustained rather than amount received from sale of stock.

**5. Bankruptcy ⟶145(1)—Directors of corporation held not liable to its trustees in bankruptcy for misappropriations of manager, in absence of knowledge of manager's bad reputation.**

In action by trustees in bankruptcy of oil corporation, defendants, though directors, *held* not liable for moneys and securities misappropriated by operating manager and financial agent, where evidence did not justify conclusion that they knew of such person's bad reputation.

**6. Bankruptcy ⟶145(1)—Defendant held not liable for indebtedness of brokerage firm to bankrupt corporation under contract executed before defendant was elected director.**

In action by trustees in bankruptcy of oil corporation, defendants *held* not liable for indebtedness due corporation from brokerage firm, which had subscribed to certain shares of bankrupt corporation's stock, where contract with such firm was executed before defendants were elected members of board of directors, though it was approved by board on day following election of one but before he had accepted position.

**7. Bankruptcy ⟶145(1)—Director of bankrupt corporation held not liable for indebtedness of individuals to corporation, in absence of proof of fraud or negligence.**

In action by trustees in bankruptcy of oil corporation, defendants, in absence of proof of fraud or negligence, *held* not liable for indebtedness of individuals to corporation, notwithstanding that defendants had been directors, especially as to claims not appearing in pleadings.

**8. Bankruptcy ⟶145(1)—Directors of bankrupt corporation held not liable to trustee for dividends declared but not paid from net profits (Act No. 267 of 1914, §§ 17–19).**

Under Act No. 267 of 1914, §§ 17–19, directors of corporation voting or assenting to dividends not made from net profits are liable only to creditors of corporation and not to corporation itself nor its trustee in bankruptcy.

**9. Limitation of actions ⟶34(5)—Prescription; action against corporation's directors for declaring dividends not paid from net profits must be brought within one year (Act No. 267 of 1914, §§ 17–19).**

Action against directors of corporation assenting to declaration of dividends not paid from net profits to enforce liability under Act No. 267 of 1914, §§ 17–19, is governed by prescription of one year.

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Judge.

Action by William F. Smalley and others, trustees in bankruptcy of the Tex-La-Homa Oil Corporation, against E. R. Bernstein and another. From the judgment, defendants appeal, and plaintiffs answered the appeal by praying that the judgment be amended. Judgment annulled and set aside, and plaintiffs' demand rejected.

Huey P. Long and Robert A. Hunter, both of Shreveport, for appellants.

Cook & Cook, of Shreveport, and Allen McReynolds, of Carthage, Mo., for appellees.

OVERTON, J. This suit was instituted by the trustees in bankruptcy of the Tex-La-Homa Oil Corporation, and later prosecuted by one of them, the remaining two having been relieved from duty, to recover of E. R. Bernstein and E. M. Brown, Jr., large sums of money. The suit is based upon allegations showing that the defendants, Bernstein and Brown, entered into a conspiracy with John O. Mitchell, G. G. Gillette, William Hargiss Walker, and others, pursuant to which the Tex-La-Homa Oil Corporation was formed under the laws of Delaware, with an authorized capital stock of $10,000,000, divided into 100,000 shares of preferred stock, of the par value of $100 a share, and 350,000 shares of common stock of no par value.

It is alleged substantially that the purpose of forming the Tex-La-Homa Oil Corporation was to enable defendants, who as owners of the Mohawk Oil Company possessed and controlled certain oil properties in Caddo parish, La., and John O. Mitchell, who was the owner of similar properties in Oklahoma, and William Hargiss Walker, who was the owner of a number of shares of stock in the Ninety-Nine Oil Company, to sell these properties to the Tex-La-Homa Oil Corporation at greatly excessive prices; that, pursuant to this conspiracy, defendants granted to Mitchell

an option to purchase said properties owned or controlled by them for $3,150,000, the latter paying $60,000 for the option out of money contributed by Gillette and other promoters of the corporation, of which $10,000 was received back by Mitchell; and that, within a month after the granting of the option, the Tex-La-Homa Oil Corporation, which had been formed only a few days before under the laws of Delaware, purchased the option from Mitchell for 80,000 shares of the common stock of the corporation and for $60,000 cash. It is also alleged that thereafter, when defendants found that the Tex-La-Homa Oil Corporation would not be able to pay in money the full amount of the purchase price, contracted to be paid for said properties, and in order to facilitate the sale of the corporation's stock, they agreed to accept, and did accept, in lieu of payments to be made in cash, amounting to $1,919,000, preferred stock in the Tex-La-Homa Oil Corporation of the par value of $1,520,000 and 15,200 shares of common stock of no par value, thereby increasing the purchase of said properties from $3,150,000 to $3,882,000, and at the same time agreed not to sell the stock to be given them in payment for a period of six months, but that, in violation of their agreement, they did sell a part of said stock.

The petition also shows that the Tex-La-Homa Oil Corporation took advantage of the option it had acquired from Mitchell by purchasing the property from defendants, the latter retaining a vendor's privilege and special mortgage to secure the deferred payments; that defendants received from the Tex-La-Homa Oil Corporation, on account of said sale, $635,000 cash; that they obtained $22,500 by the sale of the stock that was sold in violation of the contract not to sell, and that the vendor's lien and special mortgage, retained by defendants, was later foreclosed, the property sold by defendants passing back to them or to a company owned

by them, less certain property, known as the Fortuna lease, the title to which had failed, for which failure a deduction had been made from the original purchase price.

The petition also shows that, at the same meeting at which the corporation acquired the option granted Mitchell, the defendant Bernstein was elected a member of the board of directors of the Tex-La-Homa Oil Corporation, and that soon thereafter the defendant Brown was elected a member thereof. It is also alleged that, at this meeting of the board, the corporation, dominated by the conspiracy above mentioned, purchased from Mitchell the oil properties, owned by him in Oklahoma, at a price greatly in excess of their value, and later transferred the property back to him at a loss, and moreover that the directors of the corporation, including defendants, negligently or pursuant to the conspiracy originally formed, permitted Mitchell to become indebted to the corporation in the sum of $19,172.23, which sum remains unpaid and cannot be collected, due to the insolvency of Mitchell's estate.

The petition further alleges that the corporation, dominated by said conspiracy, soon after its incorporation, entered into an underwriting agreement with J. R. Sutherlin & Co., a corporation controlled by J. R. Sutherlin, one of the conspirators; that, by this contract, J. R. Sutherlin & Co. bound itself to purchase a very large percentage of the corporation's stock on the basis of 80 cents on the dollar, the corporation to issue for every share of preferred stock two shares of its common stock, the common stock to be offered by Sutherlin & Co., who were stockbrokers, to purchasers of the preferred, as a bonus; that in fact said preferred stock, or large blocks of it, was sold to Sutherlin & Co. on the basis of $65 per share; that defendants, together with Gillette, Mitchell, Walker, and others, permitted Sutherlin & Co. to retain large sums of money for its

own use and benefit, derived from the sale of said stock, and to receive and appropriate from the treasury of the corporation large sums of money, so that, at the time of the bankruptcy of the corporation, J. R. Sutherlin & Co. was indebted to it in the sum of $673,585.68 and J. R. Sutherlin in the sum of $10,000.

The petition also shows that, dominated by a conspiracy in which defendants were participants, the Tex-La-Homa Oil Corporation acquired by an exchange of stock the Globe Oil Company; that, upon the taking over of the Globe Oil Company, Gillette, a man of bad reputation, was elected operating manager and financial agent of the Tex-La-Homa Oil Corporation; that defendants and the remaining directors negligently and wrongfully permitted Gillette to have access to the notes, securities, and bank accounts of the Tex-La-Homa Oil Corporation and its subsidiary, the Globe Oil Company, with the result that Gillette appropriated to his own use large sums of money and securities belonging to the Tex-La-Homa Oil Corporation and its subsidiary, by reason of which the Tex-La-Homa Oil Corporation lost said assets, and, as a consequence, Gillette became indebted to it in the sum of $67,557.

The petition further alleges that, influenced by said conspiracy, the Tex-La-Homa Oil Corporation entered into an agreement with Sutherlin & Co. to pay quarterly dividends of 2 per cent. on the preferred stock issued by it and outstanding; that, at that time and thereafter, the directors of the Tex-La-Homa Oil Corporation, the chief among whom were defendants and Mitchell and Walker, knew that the corporation had no net profits, or, as the petition states, surplus, out of which to pay dividends, but was heavily indebted to its promoters and others; that, notwithstanding this knowledge, the directors of the corporation, including defendants, authorized to be paid out of the treasury of the corporation dividends amount-

ing to $242,334.67; that said payments were made for the purpose of promoting the sale of stock and moreover were made by the directors negligently, carelessly, willfully, and without regard to the obligations which they owed as directors to the corporation.

The petition, of which the foregoing is an outline, seeks to recover of defendants the $635,000, alleged to have been received by defendants in cash from the sale of the properties included in the Mitchell option; the $22,500, alleged to have been realized by them from the sale of a part of the stock, issued to them by the corporation in lieu of cash payments, in contravention of the agreement not to sell for a specified time; the Mitchell indebtedness, amounting to $19,172.23, in which sum it is alleged the board of directors, of which defendants were members, permitted Mitchell to become indebted to the corporation; the J. R. Sutherlin & Co. indebtedness, amounting to $673,685.68; the J. R. Sutherlin indebtedness, amounting to $10,000; the Gillette indebtedness, amounting to $67,557; and the dividends paid which are alleged to amount to $242,334.67.

The defendants filed several exceptions to the suit, which were overruled. They also filed an answer, denying their liability to plaintiff. The case was tried, the trial consuming several weeks. The trial resulted in a judgment rejecting all of plaintiffs' demands, except the demand for the dividends paid, upon which judgment was rendered against defendants, in solido, for the sum of $220,005.67, with legal interest thereon, from judicial demand. Defendants have appealed, and plaintiff has answered the appeal by praying that the judgment rendered be amended by allowing in full all of the amounts sued for.

Opinion.

[1] From the outline of the case, given above, it appears that this suit was instituted largely upon the theory, though not en-

tirely so, that defendants entered into a conspiracy with others to organize the Tex-La-Homa Oil Corporation; to sell its property at a greatly excessive valuation, partly for cash and partly on terms of credit; to sell its stock to the public; to loot its treasury, and finally to recover the property sold, by foreclosure proceedings or other means, upon the corporation's becoming unable to pay such part of the purchase price as remained unpaid.

The trial judge found that, while the evidence adduced was suggestive of such a conspiracy, yet, in his opinion, it failed to establish it, and he therefore concluded that no such conspiracy existed. Our examination of the evidence, which is quite voluminous, leads us to the conclusion that no such conspiracy existed. It is our view that defendants believed, when they granted the option, and later, when the Tex-La-Homa Oil Corporation acquired the option and purchased the property under it, that the consideration demanded was not excessive. The property which defendants had to sell was of a highly speculative character. The estimates in the record place the value of it at from $1,119,155.00 up to approximately $3,000,-000. The oil boom in Caddo parish at that time was at its height. There was therefore some basis upon which to rest the conclusion that the property was worth the price demanded. Such being at the time defendants' belief as to the value of their property, there would be no reason for them to enter into a conspiracy, using the Crescent Oil Company or Mitchell as a mere dummy, to sell it at an exorbitant price, and especially to permit the looting of the corporation to which they had to look for payment. Our conclusion is that, if plaintiff is entitled to recover anything in this suit, it must be upon some other ground than that of a conspiracy to defraud.

Plaintiff does seek to recover on other grounds. The contention is made that defendants were promoters of the Tex-La-Homa Oil Corporation, and as such owed it the duty of dealing with it in the utmost good faith and not to sell their property to it at an exorbitant price; at least without seeing that the corporation was provided with an independent board of directors and without making to all concerned a full disclosure of the facts relating to the transaction. Upon this theory plaintiff seeks to recover from defendants the $635,000, which it appears defendants received from the corporation, in various payments in cash, on account of the purchase price of the property conveyed to the corporation by defendants under the option granted by them.

[2, 3] There can be no question but that a promoter stands in a fiduciary relation to the corporation, which he is promoting, when the corporation comes into existence, and to the subscribers prior to its creation, and that, in his dealings with the corporation, he must exercise the utmost good faith and not take advantage of it, upon its creation, whether in the sale of property to it, or in other respects. 14 C. J. § 285, p. 253, and section 345, p. 295. While we think that defendants conveyed the property to the corporation pursuant to the option which the latter had acquired, at what they believed to be not an excessive price, we also think that defendants were not promoters of the corporation.

"A promoter of a corporation is one who, alone or with others, takes it upon himself to organize a corporation: To procure the necessary legislation, where that is necessary; to procure the necessary subscribers to the articles of incorporation, where the corporation is organized under general laws; to see that the necessary document is presented to the proper officer of the state to be recorded and the certificate of incorporation issued; and generally to 'float the company.' Promoters are often referred to, especially in the English cases, as 'projectors,' 'agents,' 'stewards,' or 'trustees,'

but whatever the term applied it means one who acts in the formation, establishment, and control of a company prior to the incorporation and the assumption of control by the board of directors." 14 C. J. § 282, p. 251.

And in 7 R. C. L. § 50, p. 70, verbo, "Corporations," it is said:

"Promoters are the persons who bring about the incorporation and organization of a corporation. They bring together the persons interested in the enterprise, aid in procuring subscriptions, and set in motion the machinery which leads to the formation itself. Every person acting by whatever name in the forming and establishing of a company at any period prior to the company, is considered in law as occupying a fiduciary relation towards the corporation. He is a quasi agent of the corporation and is subject to the disabilities of such. The word 'promotion' is said to be not a legal but a business term, usefully summing up, in a single word, a number of business operations, familiar to the commercial world, by which a company is generally brought into existence."

As to whether defendants were promoters of the Tex-La-Homa Oil Corporation, it may be observed, among other things, that their connection with the corporation arose in the following manner, and that their relation to it was as follows: Gillette, in the latter part of December, 1918, desired to obtain an option on defendants' property. After an all night's conference concerning the granting of the option, the parties failed to agree and parted. A few days later Gillette reappeared and stated that he was in touch with some men of means who were interested in purchasing the property, among whom were Jno. O. Mitchell, J. M. Sloan, president of the Oklahoma Iron Works, John P. Cook, a bank president, William Hargiss Walker, and W. G. Skelly. After some consultation, an option to purchase the property was granted to the Crescent Oil Company, a Delaware corporation, in which the parties named by Gillette, or some of them, were apparently interested. This option fixed the consideration for the transfer of the property at $3,150,000

and 20,000 shares of the capital stock of the Crescent Oil Company. As to the money consideration of $3,150,000, the option provided that $510,000 thereof should be paid cash on the execution of the sale, and the balance in deferred payments, secured by vendor's privilege and special mortgage on the property to be conveyed. On January 23, 1919, the Crescent Oil Company assigned the option to Mitchell for a recited consideration of $1. A few days later the Tex-La-Homa Oil Corporation was incorporated under the laws of Delaware by parties other than defendants. Defendants were consulted as to whether they would accept, in lieu of the stock of the Crescent Oil Company, to be delivered them under the option in part payment of the consideration for the transfer of the property, the same number of shares of the common stock of the Tex-La-Homa Oil Corporation, and consented to do so. About the time of the assignment of the Crescent Oil Company option to Mitchell, though bearing the date of that option, defendants granted an option on the same property to Mitchell, by which they bound themselves to transfer the property to him on the same terms as those contained in the Crescent Oil Company option, except that it was there provided that the payment to be made in stock should be in the stock of the Tex-La-Homa Oil Corporation. On January 28, 1919, the incorporators of the Tex-La-Homa Oil Corporation met and elected a board of directors composed largely of the same men who Gillette informed defendants were interested in purchasing their property. On February 10, 1919, the directors, who at that time apparently constituted all the stockholders of the corporation, met. At this meeting the corporation purchased the option held by Mitchell for $60,000 cash and 80,000 shares of its common stock, after Mitchell had advised the board that he had paid $60,000

for the option. At this meeting, the defendant Bernstein was elected a member of the board, though he did not take his seat until later. The defendant Brown was elected a director on February 21, 1919. On February 14, 1919, defendants entered into an agreement with the Tex-La-Homa Oil Corporation by which they agreed to accept in settlement of certain deferred payments, provided for by the option, 15,200 shares of preferred stock of the corporation and a like number of shares of its common stock, and agreed not to sell any of these shares for a period of six months. In due course, the Tex-La-Homa Oil Corporation took advantage of the option and purchased the property, defendants receiving the stock in part payment, and at various times, payments in money, amounting to $635,000, leaving a large balance still due.

From the foregoing it does not appear that defendants had anything to do with the organization of the corporation or with the "floating" of it. The fact that the corporation was organized by others largely for the purpose of acquiring the option granted by defendants and the property described therein does not have the effect of making defendants promoters of the corporation. Our conclusion is that it does not appear that defendants were promoters, and that there is no basis for holding them liable as such, and hence that the demand for the $635,000, received by defendants on the purchase price of the property, was properly rejected.

[4] As will be recalled, plaintiff also sues defendants for $22,500, the amount received by them from the sale of stock, issued to them by the Tex-La-Homa Oil Corporation. It appears that, when defendants agreed to accept stock in that corporation in lieu of certain deferred payments to be made in money on the purchase price of the property to be conveyed by defendants, they also agreed not to sell the stock to be thus acquired for

a period of six months. Defendants breached this agreement by selling a part of the stock so acquired within that period, obtaining for the part sold the amount, stated above, for which plaintiff sues.

In our view, plaintiff is not entitled to recover the foregoing amount. As correctly observed by the trial court, the corporation might have received some slight benefit had the agreement been observed, but the amount received by defendants from the sale of the stock is not the proper measure of damages for the breach of the agreement. The proper measure is the extent of the injury sustained, and the record is barren as to any evidence disclosing the extent to which the corporation was injured by the breach.

[5] The next demand to be considered is the one against defendants for moneys and securities alleged to have been misappropriated by Gillette. This demand is based upon the theory that defendants and the remaining directors of the Tex-La-Homa Oil Corporation elected Gillette, a man of bad reputation, operating manager and financial agent of the corporation, thereby placing him in position to misappropriate the funds of the corporation and its subsidiary, the Globe Oil Company.

With reference to such a demand, the law seems to be as follows:

"A director is liable only for his own acts or omissions; he is not merely by virtue of his position liable for the mismanagement or defalcation of officers or employees unless he was negligent in failing to exercise a reasonable supervision of the affairs of the corporation, or in the selection or retention in office of persons of known incompetency or dishonesty." 14A C. J. § 1872, p. 107.

We are not prepared to hold that the evidence justifies the conclusion that defendants knew of Gillette's bad reputation during the period in question. They disclaim such knowledge. Moreover, Gillette was associated with men who were well recommended to

defendants. Failing to find that defendants had such knowledge, or that the loss, which the evidence indicates was $20,067.02, is attributable to the negligence of defendants, we think that the trial court properly rejected this demand.

[6] As relates to the demand against defendants for the indebtedness alleged to be due the corporation by J. R. Sutherlin & Co., amounting to $673,685.68, we think that the trial court properly rejected this demand. The alleged indebtedness grows out of a contract entered into between the Tex-La-Homa Oil Company and J. R. Sutherlin & Co., a corporation engaged in the brokerage business, by which the latter subscribed to 10,000 shares of the preferred stock of the corporation, with the option of later taking 10,000 shares additional. The contract provided that, for each share of preferred stock, issued under the first subscription, two shares of common stock of the corporation should be delivered to Sutherlin & Co., free of cost, and, should that company take advantage of the option, which it did, by subscribing for 10,-000 shares additional of preferred stock, then, under this subscription, one share of common stock should be issued to it, as a bonus, for each share of preferred stock issued thereunder. The contract provided that Sutherlin & Co. should pay for the stock in installments. In disposing of the stock, this company not only conducted a campaign in which misrepresentation played a prominent part, but took steps to evade the Blue Sky Laws of various states by concealing the price it had agreed to pay for the stock. When the Tex-La-Homa Oil Corporation was declared bankrupt, according to its books, Sutherlin & Co. was indebted to it in the sum stated above.

In our view, defendants are not chargeable with this indebtedness. The contract was executed before the defendant Bernstein was elected a member of the board of directors, and was approved by the board the day following his election, but before he had accepted the position and taken his seat, and before the defendant Brown was elected a member of the board. The evidence does not connect either defendant with the frauds perpetrated by Sutherlin & Co., nor does it disclose that after their election and their acceptance of the trust, they were guilty, as regards this account, of such negligence as to render them liable. This demand, as we have said, was properly rejected.

[7] With reference to the efforts to hold defendants liable for the alleged indebtedness against J. R. Sutherlin, personally, amounting to $10,000, and John O. Mitchell, amounting to $19,172, the record discloses very little concerning these demands. We find no reason, in the absence of proof of fraud or negligence on the part of defendants with reference to these claims, to hold defendants liable for them. The same may be said concerning the demand to hold defendant liable for the indebtedness of William Hargiss Walker to the corporation for $3,856.20, which it may be observed is a claim not appearing in the pleadings, though mentioned in the evidence, and considered by the lower court. These claims were properly rejected by the trial judge.

[8] The next question to be considered relates to the payment of dividends. It appears that the Tex-La-Homa Oil Corporation, in entering into the contract with J. R. Sutherlin & Co., agreed and contracted to pay quarterly dividends on the outstanding preferred stock of the corporation; the dividends to be paid in the months of January, April, July, and October. It also appears that in May, 1919, the board of directors declared a dividend on the outstanding preferred stock, and paid on the dividend declared $9,342.67; that in July, 1919, the board declared a dividend, payable on the preferred stock, and paid on the dividend declared

$23,205; that the board did likewise in September, 1919, and paid on the dividend then declared, $71,812; and that in December, 1919, it declared another dividend, which was made payable in the following January, and paid thereon $115,646—making a total of $220,005.67 paid on the dividends declared.

It is the contention of plaintiff that there were no net profits or surplus out of which these dividends could be declared and paid; that their payment was therefore illegal; that defendants either voted for or assented to their payment, and hence are liable to the corporation; that this liability to the corporation is one of its assets, and passed to him (plaintiff) as the trustee in bankruptcy, when the corporation was adjudged a bankrupt in June, 1920, and that the right to recover on this liability is prescribed only by the prescription of ten years. On the other hand, defendants, while insisting that there were net profits sufficient to pay the dividends paid, contend, in effect, among other things, that, if there were not, the liability incurred by them was not to the corporation, but to the creditors injured by the payment of the dividends, and did not, when the corporation was adjudged a bankrupt, pass to plaintiff, as the trustee in bankruptcy, but remained in the creditors, and that, if it be assumed that plaintiff, as trustee, represents the creditors in their action to recover on the liability against them, the action is prescribed by the prescription of one year.

Plaintiff, for the purpose of showing that the liability of the directors is to the corporation, and hence that it is an asset of the corporation and passed to him as trustee, cites Corpus Juris, vol. 14A, § 1817, p. 105, section 1971, p. 190, and other authorities, in which it is said, in effect, that the liability is to the corporation. On the other hand, defendants rely primarily on section 17 of Act 267 of 1914 to show that the cause of action is vested only in the creditors injured by the payment of dividends, and was not an asset of the corporation, and therefore did not pass to plaintiff, as trustee. The section of the Act of 1914, cited by defendants, so far as it is pertinent to the question under consideration, reads as follows:

"That * * * if any dividend or other distribution of the assets be made other than from net profits, * * * the directors of such corporation voting or assenting thereto shall be jointly and severally liable to the creditors of the corporation for any loss or damage arising therefrom. * * *"

Whatever may have been the law prior to the adoption of this section, here the liability is expressly stated to be to the creditors. The liability is not said to be to the corporation also, nor is there anything in sections 18 and 19, or elsewhere in the act, justifying the conclusion that the cause of action is granted to any other than the creditors. To hold that both the corporation and the creditors have the right to sue the directors voting for or assenting to the payment of dividends other than out of net profits would be to subject the directors to suits from two independent sources for the same thing, and would bring about a conflict which the lawmaker never contemplated. Our conclusion is that the liability of the directors, in such an instance, is not an asset of the corporation, and hence did not pass to plaintiff, as trustee, when the corporation was adjudged a bankrupt.

[9] If it be said that plaintiff, as trustee, represents the creditors of the corporation, who were injured by the payment of dividends, or that all the creditors were so injured, and that, after all, one of the purposes of this suit is to repair the injury sustained by the creditors by recovering from defendants, as damages for their unlawful acts, a sum equal to the dividends unlawfully paid, still we think that plaintiff cannot recover. We think that plaintiff cannot recover because, assuming the foregoing to be true,

the demand to repair the injury sustained by the payment of these dividends has prescribed, for more than a year elapsed between their declaration and payment and the filing of this suit. There are no contractual relations between the directors of a corporation and its creditors; and hence there were none between defendants and the corporation's creditors in this instance. The claim of the creditors of a corporation against its directors for damages sustained because of dividends unlawfully paid is one arising quasi ex delicto, and not ex contractu or quasi ex contractu, and hence is governed by the prescription of one year. Knoop, Hannegan & Co. v. Blaffer, 39 La. Ann. 23, 6 So. 9. The present case is unlike Dawkins v. Mitchell, 149 La. 1038, 90 So. 396, cited by plaintiff to show that the cause of action here presented is governed, not by the prescription of one year, but by that of ten years. The theory of that case is that those elected directors of a corporation by the acceptance of the trust undertake to administer the property of the corporation, and occupy the position of mandatories of the corporation and of its stockholders, and hence that in an action either by a stockholder for himself, or in behalf of the corporation, for damages arising from a breach of the trust accepted, the action is governed by the prescription of ten years, and not of one year. This was so held because of the special duty as mandatories, or a duty similar thereto, which the directors owed to the corporation and its stockholders. No such relations exist between the directors of a corporation and its creditors.

Our conclusion is that the trial judge erred in allowing this demand.

For the reasons assigned, the judgment appealed from is annulled and set aside, and plaintiff's demand is now rejected, with costs in both courts.

THOMPSON, J., concurs in decree.