KOHLER v. McCLELLAN et al.

No. 11574.

Circuit Court of Appeals, Fifth Circuit.

July 12, 1946.

Rehearing Denied Aug. 8, 1946.

Sidney G. Roos and Bertrand I. Cahn, both of New Orleans, La., for appellant.

Monte M. Lemann, John St. Paul, Jr., Arthur A. Moreno, Azzo J. Plough, John E. Jackson, Baldwin J. Allen, Gibbons Burke, Wm. C. Dufour, and Paul B. Habans, all of New Orleans, La., for appellees.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

█ Appellant, a citizen of Mississippi and a director and shareholder of the Crescent City Laundries, Inc., a Louisiana corporation, as petitioner below, brought this derivative action for the benefit of the Crescent City Laundries, Inc.,[1] hereafter called "Crescent," against certain of its officers, directors, and other persons and corporations, who are citizens of Louisiana and of other states except Mississippi, for breaches of trust, ultra vires acts, diversion and misappropriation of funds and properties, losses through collusion with third parties and "through acts of malfeasance, misfeasance, and nonfeasance."

By way of summary, the alleged illegal transactions that divested Crescent of its assets and caused it losses were:

1. The acquisition of the Chalmette Laundry by Crescent at an overappraised value, to the enrichment of one of defendants.

2. The acquisition of the linen supply business from Crescent by National Linen Service, Inc., to the enrichment of certain of defendants.

3. The payment by Crescent of dividends on its preferred stock when it had not earned said dividends.

4. The acquisition by Crescent of the Shreveport Laundries, Inc., and Atlantic Laundry, Inc., to the enrichment of certain of defendants.

5. The purchase of supplies for Crescent from Rudolph Ramelli, Inc., to the enrichment of certain of defendants.

6. The fraudulent acquisition of stock in Rudolph Ramelli, Inc., that should have been acquired for Crescent.

7. The acquisition by Crescent of the Peoples Laundry, a worthless organization.

8. The transfer of stock in National Linen Supply Corporation to certain of the defendants without consideration.

9. The acquisition by Crescent of insurance on the life of one of the defend-

---

[1] It is urged that the suit as a derivative action is fatally defective because of absence of allegation and oath that the action is not a collusive one to confer federal jurisdiction. We think this unnecessary where, as here, the causes of action alleged do not establish the existence of collusion.

ants, premium payments being made by Crescent and principal being payable to the defendant's widow, heirs, or estate.

10. The payment by Crescent of certain bills for Union Products Co. owned by certain of defendants and the repayment of said loan partly in worthless stock.

11. The extension of excessive credit to the Roosevelt and Bienville Hotels, to the detriment of Crescent.

12. The payment of illegal, wrongful, and unauthorized increases in salaries, bonuses, and other benefits to certain officers and directors of Crescent.

13. The execution of a plan by B. C. McClellan and associates to default Crescent's bonds and to purchase, at great loss to Crescent and profit to themselves, the assets of Crescent at the consequential sheriff's sale.

The petitioner prayed for judgment in solido against all defendants, for the account of Crescent and the benefit of certain of its stockholders and of its creditors, in the sum of $4,178,000, or for such amount as may be found due the corporation as a result of the illegal acts of the defendants; and, in the alternative, that a receiver be appointed under the provisions of Act No. 159 of the Legislature of 1898, as amended.

Motions to dismiss were filed on various grounds, among which were: (1) The complaints failed to state a claim against the defendants upon which relief could be granted. (2) If the complaints stated a claim, the prescription of one, five, and ten years under the laws of Louisiana barred the claim. (3) The claim or claims asserted by petitioner in behalf of Crescent belong to, and are the property of, the N. O. Laundries, Inc. And (4) the court had no jurisdiction to appoint a receiver. From a judgment sustaining the motions to dismiss, the petitioner prosecuted this appeal.

The correctness of the ruling below is the question presented here.

The original and supplemental petitions make it plain that on July 9, 1942, "all the debtor['s] [Crescent's] choses in action and claims of any and every character against any and all persons whomsoever, whether or not shown upon the books of the debtors, and all of the debtor['s] cash, assets and effects of every name, character and description" were sold at public outcry by the civil sheriff of Orleans Parish, Louisiana, under a writ of fieri facias issued upon a money judgment against Crescent; that an attorney at law in New Orleans bought in the properties at the auction sale and transferred them to N. O. Laundries, Inc., a Louisiana corporation; and that title to all the claims against the defendants except those against B. C. McClellan and associates for their alleged fraudulent and illegal acts in connection with the sale passed to N. O. Laundries, Inc.

▆ Appellant, however, argues that the seizure and sale of all of Crescent's choses in action and claims under the general description quoted above were made under too vague and indefinite a description to give notice of specific rights and credits seized or specific rights and credits sold; hence, that all choses in action and claims remained, following the seizure and sale, the property of Crescent, and are still its property, including the claims asserted against defendants in this suit. The descriptive words of the property seized and sold clearly show an intent to seize and sell all of the assets of Crescent of every kind and character. As between the parties to the sale, Crescent and purchaser, where it was purposed to seize and sell all assets, a general description broad enough to cover all assets was sufficient.[2] Only upon the seizure and sale of specific property must the description positively identify the property. In the absence of one party to the sale the description will not become any less inclusive. Therefore, in the absence of the owner of all claims of Crescent sold at the sheriff's sale, the court below could only adjudicate upon the claims connected with and arising out of the sale itself.

▆ The allegations dealing with the formation of a plan by McClellan and as-

2 Cf. Saucier v. Crichton, 5 Cir., 1945, 147 F.2d 430; United Gas Public Service Co. v. Mitchell, 188 La. 651, 177 So. 697, 698, and a discussion of that case in Daigle v. Calcasieu Nat. Bank in Lake Charles, 200 La. 1006, 9 So.2d 394, 398.

sociates to wreck the corporation and force a public sale of all of its assets so that they could buy the assets at great profit to themselves, and the execution of the plan—the consequential sale of Crescent's assets to their alleged agent and the transfer thereafter, at a large profit, of such assets to a corporation organized by them—set forth a cause of action (claim) which was not sold in the sale of Crescent's assets on July 9, 1942, and with respect to which the prescriptions pleaded[3] are either not applicable or have not run. Who McClellan's associates were in the plan to wreck the corporation and effect a sale of Crescent's assets is not shown, and there is nothing in the complaints to connect the other defendants with the plan or with the execution of the plan. In dismissing the suit the court below acted properly as to all claims and all defendants except as to claims against the defendant McClellan arising out of the sale.

The petitioner asked the court to appoint a receiver to accomplish four objects: (1) to take over and hold the records and the papers of Crescent; (2) to join petitioner in the prosecution of this suit; (3) to prosecute such other separate and independent proceedings as may be ordered or directed by the court for the recovery of funds, property, and other assets of Crescent; and (4) to investigate and inquire into all proceedings in connection with the sale of all assets of the corporation in order to determine whether or not there was collusion or breach of trust by officers and directors of Crescent, to the end that proper and necessary proceedings may be taken to make recovery.

The petitioner as authority for the appointment of a receiver relies upon Dart's Louisiana General Statutes, Section 1209, and subsection 2 thereof, Acts of 1898, No. 159, Section 1. The statute provides:

"*Authority to appoint receiver—Persons entitled to apply for receiver.*—The several district courts of the state, and the civil district court of the parish of Orleans, are empowered to appoint receivers to take charge of the *property and business* of corporations domiciled in this state; and of the property of foreign corporations actually located herein, in the cases and under the conditions following, to-wit: [Emphasis ours.]

\* \* \* \* \*

"2. At the instance of any stockholder or creditor, when the directors or other officers of the corporation are jeopardizing the rights of stockholders or creditors by grossly mismanaging the business or by committing acts ultra vires, or by wasting, misusing, or misapplying the property or funds of the corporation."

The United States Supreme Court[4] has held:

"\* \* \* the appointment of a receiver is merely an ancillary and incidental remedy. A receivership is not final relief. The appointment determines no substantive right, nor is it a step in the determination of such a right. It is a means of preserving property which may ultimately be applied toward the satisfaction of substantive rights.

"That a remedial right to proceed in a federal court sitting in equity cannot be enlarged by a state statute is likewise clear. \* \* \*"

It is argued that the Louisiana statute, supra, makes the appointment of a receiver a substantive right and not merely a remedial right, and thus the doctrine of Pusey & Jones Co. v. Hanssen would not deprive the court below of jurisdiction to appoint a receiver under the state statutory provisions. In the case of Myers v. Occidental Oil Corp.,[5] some authority for this proposition exists. It was there said:

"The complainants likewise rely on a number of Louisiana cases based upon a statute of that state which complainants assert is merely declaratory of pre-existing equitable rights. I think, however, that the declarative nature of the statute has not been established, and I find this con-

3 Cf. Dawkins v. Mitchell, 1922, 149 La. 1038, 90 So. 396, and a discussion of that case in Smalley v. Bernstein, 165 La. 1, 115 So. 347; Pool v. Pool, La.App.1943, 16 So.2d 132.

4 Pusey & Jones Co. v. Hanssen, 1923, 261 U.S. 491, 497, 43 S.Ct. 454, 456, 67 L.Ed. 763, 771.

5 D.C.Del.1923, 288 F. 997, 1002.

912

clusion supported by Fletcher on Corporations, which, at page 8864 says:

"'Probably the most liberal statute in this country in favor of the appointment of receivers is found in Louisiana. * * *'"

In Southern Joslyn Co., Inc., v. Electric Appliance Co., 1931, 172 La. 219, 133 So. 753, 755, the Louisiana Supreme Court, in reference to the Louisiana statute, said: "According to the statute, a suit for the appointment of a receiver to take charge of the business and property of a corporation—whether it be brought by a creditor or by a stockholder of the corporation—is a complete demand, and not merely ancillary to a demand for a money judgment against the corporation."

The state law is not merely an enlargement of the remedial power of the local court, as in Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763. It recognizes the inadequacies of the relief afforded at law to stockholders and creditors of a corporation and is an attempt to give them adequate relief where the corporate business is grossly mismanaged or its property or funds are wasted or misappropriated. Where the requisite amount and diversity of citizenship grounds of jurisdiction exist, the remedy afforded by the state act may be availed of as well in a federal court as in a state court.[6]

"* * * It is true that, where a state statute creates a new equitable right of a substantive character, which can be enforced by proceedings in conformity with the pleadings and practice appropriate to a court of equity, such enforcement may be had in a federal court, provided a ground exists for invoking the federal jurisdiction. * * * But the enforcement in the federal courts of new equitable rights created by states is subject to the qualification that such enforcement must not impair any right conferred, or conflict with any inhibition imposed, by the Constitution or laws of the United States.

* * * Whatever uncertainty may have arisen because of expressions which did not fully accord with the rule as thus stated, the distinction, with respect to the effect of state legislation, has come to be clearly established between substantive and remedial rights." Henrietta Mills v. Rutherford Co., 281 U.S. 121, 127, 128, 50 S.Ct. 270, 272, 74 L.Ed. 737.

In Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231, where Pusey & Jones Co. v. Hanssen, supra, and Henrietta Mills v. Rutherford Co., supra, are analyzed and discussed, the Court said [326 U.S. 99, 65 S.Ct. 1469]:

"* * * Whatever contradiction or confusion may be produced by a medley of judicial phrases severed from their environment, the body of adjudications concerning equitable relief *in diversity cases* leaves no doubt that the federal courts enforced State-created substantive rights if the mode of proceeding and remedy were consonant with the traditional body of equitable remedies, practice and procedure, *and in so doing they were enforcing rights created by the States* and not arising under any inherent or statutory federal law.

\* \* \* \* \*

"The source of substantive rights enforced by a federal court *under diversity jurisdiction,* it cannot be said too often, is the law of the States. Whenever that law is authoritatively declared by a State, whether its voice be the legislature or its highest court, such law ought to govern in litigation founded on that law, *whether the forum of application is a State or a federal court and whether the remedies be sought at law or may be had in equity.*" [Emphasis ours.]

With respect to Pusey & Jones Co. v. Hanssen, supra, the Court in Guaranty Trust Co. v. York said: "* * * the Court [referring to the Supreme Court] had to decide whether a Delaware statute had created a new right appropriate for enforcement in accordance with traditional equity practice or whether the statute had

6 Pierce Petroleum Corporation v. Empire Gas & Fuel Co., 5 Cir., 1927, 17 F.2d 758; Cf. Guardian Savings & Trust Co. v. Road Improvement District, 1925, 267 U. S. 1, 45 S.Ct. 201, 69 L.Ed. 487; City and County of Dallas Levee Improvement District v. Industrial Properties Corp., 5 Cir., 1937, 89 F.2d 731, 734.

merely given the Delaware Chancery Court a new kind of remedy. The statute authorized the Chancellor to appoint a receiver for an insolvent corporation upon the application of an unsecured simple contract creditor. * * * the Court recognized that if the Delaware statute had been one not regulating the powers of the Chancery Court of Delaware but creating a new interest in a contract creditor, the federal court would have had power to grant a receivership at the behest of such a simple contract creditor, as much so as in the case of a secured creditor. * * *"

As has been pointed out, the Louisiana statute is not one, regulating the equity powers of Louisiana courts but one creating a new interest (right) in stockholders and creditors.

The pertinent inquiry is whether, under the Act of 1898 as amended, the complaints alleged facts which would authorize or justify the court to appoint a receiver at the instance of a minority stockholder. Our opinion is that they do not, for two reasons: First, the four objects to be accomplished do not require the appointment of a receiver. Second, under the Louisiana statute the appointment of a receiver is not mandatory but discretionary.

In Marcuse v. Gullett Gin Co., 52 La. Ann. 1383, 27 So. 846, the court said:

"There is no necessity for the appointment of a special receiver to institute actions to recover from the officers and directors of a corporation, who hold a majority of its stock, property of the corporation, which a stockholder charges them with having illegally diverted and appropriated to themselves as salaries.

"The individual shareholder may himself bring such actions, by making the corporation, and the directors against whom relief is sought, parties."

In Russell v. Citizens' Ice Co., 118 La. 442, 43 So. 44, the court again said: "A stockholder has full and adequate remedy through action in his own name against such commissioners for an accounting or for damages for alleged misuse of the corporate property or funds intrusted to them." See also Reynaud v. Uncle Sam Planting Co., 152 La. 811, 94 So. 405; Carey v. Dalgarn Construction Co., 171 La. 246, 130 So. 344.

What a receiver might do, petitioner as a shareholder may himself do. Petitioner, therefore, is not without his remedy for the acts complained of to his prejudice. Under such circumstances Louisiana courts have uniformly held that the "courts will not undertake to manage the affairs of the corporation or to liquidate the same by the appointment of a receiver."

On the question of judicial discretion under the act, the court in Duval v. T. P. Ranch Co., 1922, 151 La. 142, 91 So. 656, 659, said: "The appointment of a receiver for the causes set forth in section 1 of Act 159 of 1898 are not mandatory, but are subject to judicial discretion, and a receiver should not be appointed, except in cases where it is evident that such appointment will serve some useful purpose. * * *"

In refusing to appoint a receiver the court below did not abuse its discretion. (1) The petition stated no reason why a receiver should take over and hold the records and the papers of Crescent. (2) The appointment of a receiver to join petitioner in the prosecution of this suit would not in any way aid the court in its prosecution. (3) A receiver will not be appointed to bring independent and separate proceedings to recover assets of Crescent where no recoverable assets are shown to exist. (4) The appointment of a receiver to investigate the sale of Crescent's assets would in no way facilitate this action.

Byron C. McClellan died while this appeal was pending, and upon motion of Mrs. Elizabeth McClellan Humphrey, she, as testamentary executrix of Byron C. McClellan, was made a party defendant and appellee in the place and stead of Byron C. McClellan.

The judgment appealed from is affirmed as to all defendants except Byron C. McClellan, and affirmed as to Byron C. McClellan (now represented herein by Mrs. Elizabeth McClellan Humphrey, as testamentary executrix of Byron C. McClellan) on all causes of action except the cause

of action growing out of the alleged plan to wreck Crescent and the consequential sheriff's sale of Crescent's assets under said plan, the cost of this appeal to be borne one-half by Mrs. Elizabeth McClellan Humphrey, as testamentary executrix of Byron C. McClellan.

Affirmed in part, and reversed and remanded in part.

HUTCHESON, Circuit Judge (specially concurring).

I agree with the result arrived at by the majority and with the reasons given for arriving at it. I disagree only with the statement in the opinion, which I regard as unnecessary to the decision, that the authority to appoint a receiver as "a complete demand and not merely ancillary to a demand for a money judgment against the corporation" given by Louisiana Statutes, Act of 1898, No. 159, may be exercised as well in a federal as in a state court. Pusey & Jones v. Hanssen, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763, approved in Gordon v. Washington, 295 U.S. 30 at pages 37 and 38, 55 S.Ct. 584, 588, 79 L.Ed. 1282[1] and cited arguendo with approval in Kelleam v. Maryland Casualty Co., 312 U.S. 377 at page 381, 61 S.Ct. 595, 85 L.Ed. 899 and in Guaranty Trust Co. v. York, 326 U.S. 99 at page 106, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231, is authority to the contrary. It may be, in the present climate of opinion prevailing in the Supreme Court, that the doctrine, so clearly enunciated in Pusey & Jones v. Hanssen and so firmly reannounced in Gordon v. Washington and Kelleam v. Maryland Casualty Co., is on the way out. I think though this is neither the court nor the occasion to say so. This is not the court because we are without authority to overrule Supreme Court decisions, and whether, as diviners, we have read or misread the crystal bowl, we have had our labor for our pains. This is not the occasion, for, holding as we do that if the court had the authority to appoint, it did not err in not appointing a receiver, we have made it clear that our effort at divination is completely gratuitous.

---

[1] In this case Chief Justice Stone, speaking for a unanimous court, simply and clearly thus restated the reason for the appointment of federal equity receivers and the basis on which such appointment rests: "A receivership is only a means to reach some legitimate end sought through the exercise of the power of a court of equity. It is not an end in itself. Where a final decree involving the disposition of property is appropriately asked, the court in its discretion may appoint a receiver to preserve and protect the property pending its final disposition. * * * it has never been extended to other classes of cases. Whenever the attempt thus to extend it, by using the receivership as an end instead of a means, has been brought to the attention of this Court, it has pointed out that a federal court of equity will not appoint a receiver where the appointment is not ancillary to some form of final relief which is appropriate for equity to give."