249 So.2d 268 (1971)
GRAND ISLE CAMPSITES, INCORPORATED, Plaintiff-Appellant,
v.
Richard E. CHEEK and Edward
v.
Fetzer, Defendant-Appellee.
No. 8335.
Court of Appeal of Louisiana, First Circuit.
May 31, 1971.
Rehearing Denied June 30, 1971.
*269 Lawrence B. Sandoz, Jr., of Sandoz, Sandoz & Schiff, Opelousas, for plaintiff-appellant.
Frank P. Simoneaux, of Breazeale, Sachse & Wilson, Donald S. Zuber, of Seale, Smith, Baine & Phelps, Baton Rouge, for defendant-appellee; Edward V. Fetzer, in pro. per.
Before LOTTINGER, SARTAIN and TUCKER, JJ.
SARTAIN, Judge.
The plaintiff, Grand Isle Campsites, Inc., instituted this action against Richard E. Cheek for the recovery of $125,000.00 which represented the amount of an alleged secret profit made by Cheek resulting from the purchase of real estate by the corporation. Plaintiff alleged that Cheek was a promoter or de facto director of the corporation and as such owed a fiduciary duty not to make a secret profit on the transaction at the expense of the corporation. Cheek's lawyer, Edward V. Fetzer, was named as a defendant by supplemental petition. By third party petition, Fetzer joined his professional liability insurers, Continental Casualty Company and St. Paul Fire and Marine Insurance Company. Plaintiff alleged that Fetzer led plaintiff to believe he was representing the corporation, that Fetzer did in fact act as attorney at law for the corporation, that he knew or should have known of Cheek's intention to make a profit at the expense of the corporation and that he had a duty to disclose the facts surrounding the transaction to the officers of the plaintiff corporation. Plaintiff did not allege fraud or collusion on the part of the defendants.
The trial judge found that plaintiff had failed to prove that Cheek owed a fiduciary duty to the corporation at the time of the transaction, either as a promoter or a director, or that Fetzer owed a duty as attorney to disclose what he knew about the facts leading up to the sale or Cheek's intention to make a profit. Plaintiff's suit as to all defendants was dismissed and plaintiff perfected this appeal. We affirm the judgment of the trial court.
Mr. Cheek discovered during the summer or fall of 1967 that Humble Oil Company owned certain undeveloped land at Grand Isle, Louisiana, and that Humble would sell it for $275,000.00. He acquired this information through Mr. George Singelman and the latter's close friend Harvey Condron who worked in the land office of Humble Oil. Through a friend of Mr. Cheek, one E. J. Cote, three businessmen from Opelousas learned of the availability of the land and expressed an interest in participating in the development venture. These three included Mr. H. J. Danel and Mr. C. J. Ryder (co-owners of a general contracting firm Danel-Ryder, Inc.) and Mr. S. S. Tomlinson, president of the St. Landry Bank and Trust Company of Opelousas.
Essentially, Mr. Cheek informed the other three men that he had obtained an option to purchase the property for $400,000.00. After several meetings, examinations of maps and aerial photographs, and two visits *270 to Grand Isle, the four men decided to form a corporation to purchase and develop the property, with each man having a 25% interest. The purchase price of $400,000.00 was agreed upon by all after they had reviewed sales of comparable property in the area. Although Mr. Cheek had previously caused the name Grand Isle Development Corporation to be reserved with the Secretary of State, the men decided to form a new corporation under the name of Grand Isle Campsites, Inc., the plaintiff herein, and Mr. Tomlinson undertook the preparation of the articles of incorporation, other necessary papers and the arrangements for loans of $200,000.00 each from Capital Bank and Trust Company in Baton Rouge and First National Bank of Lafayette. Although the reason therefor is disputed, Mr. Cheek's name was omitted as an incorporator, officer, director or shareholder when the corporation came into existence on January 18, 1968, but it was understood that he would eventually be given a 25% interest in the stock. In fact, at a directors' meeting on March 12, 1968, Cheek was made a director and one-fourth owner, by resolution. Mr. Cheek assigned to the corporation his rights in what purported to be an option to purchase the property for $400,000.00 from George Singelman dated October 15, 1967. (There was conflicting testimony on this point. Mr. Singelman said he received a check for $10,000.00 from Mr. Cheek for the option and gave it to Mr. Condron in Humble's land office but the check was never negotiated and was eventually returned to Mr. Cheek. However, Mr. Condron stated that Singelman never had an option to purchase from Humble and that he never received a check from either Singelman or Cheek.) Nevertheless, Humble sold the property to Singelman by deed dated January 25, 1968, for a consideration of $275,000.00, although the actual transfer was not made until the morning of January 30, 1968, when the price was paid by a check drawn on the account of Richard E. Cheek, Inc. That afternoon, Singelman sold the property to the plaintiff corporation for $400,000.00. The two notes for $200,000.00 each were signed by Danel, Ryder, Cheek and Tomlinson, representing the debt for the bank loans. Thus, it is immaterial whether Singelman ever had an option to purchase from Humble and whether there was a basis for the option from him to Cheek, since Singelman did in fact buy the property and sell it to the plaintiff as assignee of Cheek's purported option from him, Singelman.
The following joint stipulation was made a part of the record:
"Richard E. Cheek, Inc., gave its check for $275,000.00 to Humble Charitable Trust and Harvey Condron of Humble Charitable Trust gave a deed to the Grand Isle property in question. The deed to George Singelman is dated January 25, 1968. The consideration recited is $275,000.00. On January 30, 1968, the property was sold by George Singelman to Grand Isle Campsites, Inc., for $400,000.00. Richard E. Cheek received the $400,000.00 proceeds."
Mr. Singelman admitted that he had not paid anything to Humble for the property and was in fact a "go-between" in the transaction.
Defendant Fetzer became involved when the principals in the venture were discussing an attorney who would handle the legal aspects of the transfer to the corporation which was to be formed. Mr. Tomlinson suggested Mr. Jules Landry, a Baton Rouge attorney, but then learned from him that he did not have the time to perform the necessary work by January 30, 1968, when the sale was to take place. Mr. Cheek informed the others that his attorney, Edward V. Fetzer, had already done some work for him and was familiar with the matter, and that since Fetzer owed Cheek some favors he would prepare the necessary documents without charge to the corporation.
Mr. Fetzer handled the assignment to the corporation of Cheek's option from *271 Singelman. He notified Mr. Condron of Humble's land office that Singelman rather than Grand Isle Development Corporation (which was never formed but was only a name reserved with the Secretary of State) would be named as vendee in the sale from Humble Charitable Trust. At Mr. Tomlinson's request, Mr. Fetzer prepared the act of sale from Singelman to the corporation, the mortgage from the corporation to the Lafayette bank, a mortgagee's title opinion and the necessary corporation minutes and resolutions. He assured Tomlinson, Danel and Ryder that the title which they acquired was good and merchantable and that the sale was in all respects valid. He deposited the corporation's check for $400,000.00 in his "client's account" and issued a check in a like amount to Singelman, who endorsed it payable to the order of Richard E. Cheek. Cheek then deposited that check to cover the check for $275,000.00 which he had given to Humble Charitable Trust earlier in the day.
Plaintiff relies on these facts to show that Cheek was a promoter or de facto director of Grand Isle Campsites, Inc., and, since Mr. Condron of Humble's land office stated that he would have sold the property to Cheek or anyone he named for $275,000.00, that Cheek breached a fiduciary duty owed to the corporation not to make a secret profit on the transaction. Plaintiff also points to two numbered checks drawn on the account of Richard E. Cheek, Inc., to show that Cheek was actively engaged in the activities and control of the corporation. It was shown that Check Number 8102 was issued in the middle of January, 1968. But there is substantial dispute over the time of issuance of the next two checks, numbered 8103 and 8104. Number 8103 was for $250.00 and payable to Tomlinson, Danel and Ryder. Plaintiff contends that the check represented one-fourth of the paid-in capital and was issued prior to the sale of land on January 30, 1968. However, the check was apparently undated when it was issued (only the word "March" appears on the appropriate line) and in any event it was not cashed until March 18, 1968, when Cheek was made a director and co-owner. Number 8104 was for $1,000.00 and payable to Grand Isle Campsites, Inc., and plaintiff contends that it represented Cheek's share of the working capital of the corporation. However, that check was also undated and was never cashed. Mr. Cheek was questioned about the order in which he issued his numbered checks and answered that he sometimes tore checks from the book and carried them in his pocket for a period of time, to the consternation of his bookkeeper. Other checks in the record substantiate this practice, as, for example, Number 8177 was issued on January 30, 1968; Number 8166, on January 31; and Numbers 8169, 8172 and 8206, all on February 5. In view of these facts and on the face of the records of the corporation itself, we agree that plaintiff has failed to establish Cheek's status as a de facto director at the time of the land acquisition.
The question remains, was Mr. Cheek a promoter of the plaintiff corporation?
We have been referred to several sources which characterize a person as a promoter by the nature of his activities or conduct relative to the formation and advancement of the corporation. We quote the following portion of the trial court's reasons for judgment:
"Generally, a promoter is an organizer: one who brings persons together to form a corporation. He endeavors to procure subscriptions to its capital stock and acquire other capital by which the corporation is to carry out the purposes set forth in the corporate charter. Cyclopedia of the Laws of Private Corporations, Sec. 189; 18 Am.Jur.2d Corporations, Sec. 109; Old Dominican Copper Mining and Smelting Co. v. Bigelow, 203 Mass. 159, 177, 89 N.E. 193.
"In Smalley v. Bernstein, 165 La. 1, 115 So. 347, our Supreme Court quoted *272 with approval the following language from 14 C.J., Sec. 282, page 251:
`A promoter of a corporation is one who, alone or with others, takes it upon himself to organize a corporation: to procure the necessary legislation, where that is necessary; to procure the necessary subscribers to the articles of incorporation, where the corporation is organized under general laws; to see that the necessary document is presented to the proper officer of the State to be recorded and certificate of incorporation issued; and generally to "float the company". Promoters are often referred to, especially in the English cases, as "projectors", "agents", "stewards", or "trustees" but whatever the term applied, it means one who acts in the formation, establishment, and control of a company prior to the incorporation and the assumption of control by the board of directors.'"
In the instant case, it is clear that Mr. Cheek had no connection with the formalities of the establishment and organization of Grand Isle Campsites, Inc., as Mr. Tomlinson was responsible for the preparation of the necessary documents. Mr. Tomlinson also arranged for the financing through bank loans. Rather than use the Grand Isle Development Corporation, which Cheek had reserved with the Secretary of State, the others preferred to form their own corporation.
We repeat for the purpose of emphasis that Cheek individually had been investigating the development venture for some months before the other men learned of it. His acquaintance Mr. Cote informed Mr. Danel about it and the latter told Mr. Ryder. Danel and Ryder sought Cheek out, rather than the reverse, and in effect asked Cheek if they could join him in the venture. Thereafter, Danel and Ryder, not Cheek, invited Mr. Tomlinson to join with them. Danel, Ryder and Tomlinson were all experienced businessmen and were familiar with development projects. They viewed the property, examined comparable sales figures and discussed the proposed roles of each in the actual development of the property. It is obvious that they were in complete agreement as to the wisdom of the venture and that the proposed purchase price of $400,000.00 was entirely satisfactory. We note that plaintiff does not seek the rescission of the sale on the grounds of fraud or misrepresentation but seeks only the recovery of the profit made by Cheek.
It was only after the discussions, investigations, and agreements that the corporation was finally formed and Mr. Tomlinson took care of that aspect. Mr. Cheek did nothing in furtherance of the organization of the corporation after explaining to the others the nature of the proposed development venture and asserting his confidence that it would be a financial success. His only actions after that time involved the assignment of his option to purchase to the corporation and the volunteering of his attorney's services to prepare the necessary documents in connection with the sale. Under these circumstances, we cannot say that Mr. Cheek was a promoter, by legal definition, of the plaintiff corporation, Grand Isle Campsites, Inc.
After reaching this conclusion, we deem it appropriate to quote the following observation made by the trial judge:
"Basically, the powers of this Court are limited to findings of fact from the evidence and the law applicable thereto. We are not in any sense a censor of moral or ethical practices of parties litigant. We must not confuse moral reprehensibleness with legal culpability. The arcane arts of `high finance' ofttimes appear to the uninitiated, such as the writer of this opinion, dark and devious. However, in the absence of constitutional or statutory interdiction of such practices, they are beyond the reach of judicial restraint."
Defendant Fetzer's role in the transaction has already been described. Plaintiff *273 contends that his failure to disclose to its officers that Cheek was making a profit should make him liable for the amount of that profit. It is argued that Fetzer's duty to disclose the information arose out of an attorney-client relationship created when Cheek retained Fetzer to prepare the necessary documents and pass the act of sale from Mr. Singelman to the corporation.
Mr. Fetzer responds that everyone knew he was Cheek's personal attorney and had worked previously for him in connection with the subject property. He denied that he was "representing" the corporation or anyone else in passing the sale. At Mr. Cheek's request, he merely followed Mr. Tomlinson's instructions relative to the preparation of the documents and truthfully assured the parties that the sale was valid and the title good and merchantable, which was all he had been requested to do. Assuming for the sake of argument that, since the corporation did receive a benefit from Fetzer's work, an attorney-client relationship did exist, nevertheless the scope of Fetzer's responsibility is limited by the express understanding between him and the corporation's officers. He was not called upon to give his opinion as to the wisdom of the venture, the reasonableness of the price or any other affairs of the corporation. All of those matters had been settled to the satisfaction of all concerned prior to his involvement in passing the act of sale and it was unimportant to him, for the purposes of his work, how such agreements had been reached. The attorney-client relationship is contractual in nature and is based upon the express agreement of the parties as to the nature of work to be undertaken by the attorney. The agreement or consent of an attorney to perform work for a party on a particular matter or transaction does not create an attorney-client relationship as regards other business or affairs of the client. Delta Equipment and Construction Co. v. Royal Indemnity Co., 186 So.2d 454 (1st La.App., 1966). As noted by the trial judge, it is not the duty of an attorney who is retained to check a title on property and pass an act of sale to investigate the preliminary negotiations of the parties and involve himself in questions of how the parties arrived at the stated price.
For the reasons assigned, the judgment appealed from is affirmed, at plaintiff-appellant's costs.
Affirmed.